# Lycoming County *versus* Gamble.

*Shares of stock in West Branch and Susquehanna Canal Company taxable for county purposes.*

Under the Act of April 29th 1844, shares of the capital stock of the West Branch and Susquehanna Canal Company are subject to taxation for county purposes.

ERROR to the Common Pleas of *Lycoming county.*

This was an amicable action, in which the county of Lycoming was plaintiff and John A. Gamble was defendant, and in which the following case was stated for the opinion of the court:—

The assessor of the borough of Jersey Shore, under special instructions and directions from the commissioners of Lycoming county, returned for taxation for county rates and levies the following stocks as the property of the defendant, at the valuation specified in the assessment—a copy of which is hereto annexed and made part of this case, viz. :—

*Assessment for the year* 1862, *for county purposes.*

To JOHN A. GAMBLE.

West Branch and Susquehanna Canal Stock.
No. of shares 2774, valuation $40 each. Total . $110,960
At 6 mills, · . . . . . . . . 665,76
Shares of Bank Stock 193, at $20. Total . . 3,860
At 6 mills, . . . . . . . . 231,60

_____

797,36

The questions for the decision of the court are, whether any, and if any, which of said stocks are liable to be assessed under the laws of Pennsylvania, in the manner and for the purposes

[Lycoming County *v.* Gamble.]

thus claimed.   If the court should be of opinion that all or any of said stocks are thus liable to taxation, and that the defendant is legally liable to pay the same, then judgment to be entered accordingly against said defendant, specifying for what said judgment is entered.   Otherwise judgment to be entered for the defendant.

The court below delivered the following opinion: "The defendant held two thousand seven hundred and seventy-four shares of the stock in the West Branch and Susquehanna Canal Company, valued at $40 per share, amounting to $110,960, upon which a tax for county purposes of six mills on the dollar is intended to be assessed.   He also owns two hundred and ninety-three shares of bank stock valued at $20 per share, amounting to $3860, upon which same assessment is intended to be made.

" The question to be decided is whether these stocks, or either of them, are liable to taxation for county purposes.

" The counsel for the county gave up the argument in the case stated, on the right of the commissioners to assess a tax upon bank stock for county purposes.

" The Act of 29th of April 1844, Pamph. Laws 497, § 32, enumerates, amongst other subjects of taxation, all shares or stock in any bank, institution, or company, now or hereafter incorporated by or in pursuance of any law of this Commonwealth or of any other state or government.   These, the act declares, are to be valued and assessed, and subject to taxation for the purposes in this act mentioned, and for all state and county purposes whatsoever.

" The preamble to the act declares that it is necessary that provision be made for payment of the interest on the state debt; therefore, be it further enacted, that from and after the passage of this act, all real estate, &c.   The section concluding as above stated.   The 33d section of the act declares that the amount of the tax chargeable on the capital stock of all banks, institutions, and companies, incorporated by or under any law of this Commonwealth, on which a dividend or profit of six per cent. per annum or more shall be made or declared, shall be at the rate of one-half mill of each one per cent. of such dividend or profit. If a dividend of less than six per cent. be made, it is made the duty of the cashier or treasurer, and a majority of the directors or managers, annually to estimate and appraise the capital stock of such bank, institution, or company, and its annual value in cash, and when so done forward a certificate to the auditor-general; and the cashier and treasurer are required to transmit to the Secretary of the Commonwealth, out of the funds of the bank, institution, or company, a sum equal to three mills on every dollar of the capital stock so estimated and appraised.   It is made the duty of the cashier or the treasurer to give notice to

[Lycoming County *v.* Gamble.]

the stockholders of such bank, institution, or company of the amount required on such share of stock by them respectively held, to enable the cashier or treasurer to pay the said tax. The act then imposes a penalty on the bank, institution, or company, that shall neglect or refuse to pay the said tax.

" By the 34th section of the act, the commissioners of each county are required annually, at the time of making county rates and levies, to assess for the use of the Commonwealth a tax upon the articles therein enumerated, and by the 35th section they are required to issue their precept to the collectors to collect the same, and to add one mill on a dollar valuation of all property theretofore made subject to taxation. This act fixes the amount to be paid to the Commonwealth, by whom payment is to be made, and the penalty for neglect or refusal to pay.

" On the 22d of April 1846, an act was passed for the reduction of the public debt, and by the 3d section, it is made the duty of the assessors to require every person, every firm and partnership, and the president, secretary, cashier, and treasurer of every company or corporate body, subject to taxation therein, to deliver a statement in writing, &c., and also the amount of all shares and stock held and owned by such person, company, firm, or corporate body, in any bank, institution, or company, now or thereafter incorporated, in pursuance of any law of any other state or government, &c. The 6th section makes it the duty of the assessors to make statements of the money and stocks specified in the preceding section of the act, and from the statements thus furnished the commissioners are to assess and tax them in the same manner, for the same purposes, and at the same rates, as are specified and provided for in the assessment of money and stock by the Act of April 29th 1844. On the 12th of April 1859, an act entitled 'An act to equalize taxation upon corporations' was passed, which declares that from and after the passage of this act the capital stock of all banks, savings institutions, and companies pay three mills upon a valuation of the capital stock of the same, agreeably to the 33d section of the Act of the 29th of April 1844, and repeals so much of any then existing law as is inconsistent with the foregoing provisions. This appears to be the last act passed on the subject of taxing banks, savings institutions, and incorporated companies.

" The West Branch Canal was constructed by the Commonwealth and completed at the expense of her tax-paying citizens.

" On the 21st of April 1858, an act was passed requiring the governor to sell and deliver to the Sunbury and Erie Railroad Company, all the public works of the Commonwealth, and all the property thereto belonging or in any wise appertaining, and all the right of the Commonwealth therein, for the price and on the terms mentioned in the act. The said company, their suc-

[Lycoming County v. Gamble.]

cessors and assigns, to hold the same free and discharged of all encumbrances except such as are provided for in the act.    The act gives the company authority to sell and convey, or lease for a term of years, the whole or any part of said property, to any corporation of the state, or to any association of individuals and their grantees, to hold and enjoy the same with all the rights, privileges, and franchises granted by the act of the Sunbury and Erie Railroad Company, and under such corporate name as the said grantees may adopt.

" On the 19th of May 1858, a deed was executed in pursuance of the directions of the act to the Sunbury and Erie Railroad Company, and that company, by deed dated 26th June 1858, granted and conveyed the same to the West Branch and Susquehanna Canal Company.

" By the Act of May 21st 1859, Pamph. Laws 647, in consideration of the advantages expected to be derived by the Commonwealth from the completion of the Sunbury and Erie Railroad, the bonds to be issued by the company under its charter, and all its municipal bonds owned by the company or thereafter to be issued in payment of subscriptions to their capital stock, and the property of the company or any property acquired by the company, are exempt from taxation for ten years.

" This act has no application to the question under consideration.   It is the stock of the West Branch and Susquehanna Canal Company that is sought to be charged with county taxes, and not the bonds or property of the Sunbury and Erie Railroad Company; and the fact that the Commonwealth sold her works to the company the next year cannot be construed as an exemption from taxation.   While the public works belonged to the Commonwealth they were not subject to taxation.   Whether the stock of the West Branch and Susquehanna division is subject to a *state tax* upon their capital stock is put to rest by the Act of May 1st 1861, Pamph. Laws 1468.   The preamble declares that doubts had arisen under then existing laws, whether the companies and associations which have purchased and then owned the different lines of the canals, theretofore sold to the Sunbury and Erie Railroad Company, were subject to a state tax on their capital stock, and to remove those doubts it is declared and enacted, among others named in the act, that the West Branch and Susquehanna Division Canal Company, are each and all of them declared to be thereafteer subject to the payment to the Commonwealth of the same taxes, upon their capital stock respectively, as are assessed upon the capital stock of companies incorporated by or under any laws of the Commonwealth, in pursuance of the act entitled 'An act to equalize taxation upon corporations,' approved the 12th day of April 1859.

" The right to impose taxes upon the stock of the West Branch

[Lycoming County *v.* Gamble.]

and Susquehanna Canal Company is claimed under the Act of April 29th 1844, already referred to. If doubts existed as to the right to impose a tax upon the stock of the company for state purposes, it existed with equal force on the 1st of May 1861. The expression in the act 'for all state and county purposes whatsoever,' appears as clear in the one case as the other, but the 33d section renders the right to tax for county purposes less clear. The legislature, by the Act of 1861, subjects the stock in that company, after its passage, to a tax for state purposes. The power of the legislature to exempt stock of this company from taxation for one purpose and impose it for another will not be questioned. There is no declaration in the Act of 1861, or expression by the legislature, that the stock was liable to taxation for any other purpose before that time, but only thereafter. The Act of 1861 subjects the stock to taxation for state purposes only, and the exercise of the legislative power for that purpose only is satisfied or no other or additional tax will be imposed by courts: New York and Erie Railroad Co. *v.* Sabin, 2 Casey 245. Taxation is a legislative, not judicial power. The same remarks made by Justice Woodward in the case just cited may be made in the case under consideration. If the legislature had meant that the property of this company should be taxable, in the ordinary modes, under our Acts of Assembly of the 15th of April 1834, and the 29th of April 1844, they would have imposed no special taxation, or if they meant that the company should be taxable under these acts, in addition to the special imposition, they would have said so. Without some word to lead us to that conclusion, we will not infer that both special and general legislation were intended."

The court, on the case stated, directed judgment to be entered for the defendant, which was the error assigned.

*G. W. Youngman*, for plaintiff.

*Gamble & Hepburn*, for defendants.

The opinion of the court was delivered, March 28th 1864, by

Thompson, J.—It seems to me there was a misconception by the learned judge below, as to the meaning of certain terms used in the Act of 29th of April 1844, which resulted in a failure to take the distinction between *capital stock* of a corporation designed to be taxed for state purposes, and shares of stock in "banks, institutions, and corporations," for state and county purposes. Shares of stock, and capital stock, of a corporation are distinct and different things obviously, and we think the distinction is plain in the act.

The 32d section contains an enumeration of subjects of taxa-

tion "for all state and county purposes whatsoever," and in this list, among other things, is to be found, "all shares of stock in any bank, institution, or company, now or hereafter incorporated by or in-pursuance of any law of this Commonwealth, or of any other state or government." It cannot be doubted, I think, that the shares of stock here mentioned, are shares in the hands of private owners, and not the aggregate stock of the corporation, for they are placed on the same footing of liability to taxation, as shares of stock held in foreign corporations, which could not be taxed but when found in the hands of citizens of the state.

In the 33d section, the subject of taxation is not shares of stock, but the "*capital stock* of the banks, institutions, and companies" therein mentioned. This is a corporation tax differently imposed and collected, and for state purposes only. The former tax is assessed and collected by the county officers and paid to the county treasurer; while the latter is retained or collected by the officers of the corporation, and paid directly to the state treasurer.

The provision is express and clear, that shares of stock held by individuals, and corporations holding as individuals, are taxable for both county and state purposes. The exemption claimed should be equally explicit; but I do not discover that this is so, or even an inkling of a design in the subsequent legislation to repeal the provision.

The 3d section of the Act of 1846 has not this effect. That act added some new subjects of taxation, for state and county purposes, in its first section, and in the 3d provided a mode for the discovery of the amount of money due and owing to the taxable inhabitants, firms, partnerships, and corporations, whether by judgment, decree, mortgage, bond, note, &c., and also the amount of all *shares of stock* held or owned by such person or persons, firms, &c., "in any bank, institution, or company, now or hereafter incorporated in pursuance of any law of any other state or government." The omission of the words in this sentence "*law of this Commonwealth or*," which is in precisely the same language in the 32d section of the Act of 1844, with the exception of the omitted words, is supposed to be an implied repeal of the express provision making shares of stock in state institutions and corporations taxable for county purposes. The objects of these provisions are dissimilar. The first was to declare what property and subjects should be taxed for state and county purposes; the second was designed to facilitate the assessment and collection of the taxes on these enumerated subjects, and the omission merely to require answers in regard to any one of them, would not on any principle of law stand for an exoneration. It would be taxable, notwithstanding there might be greater difficulties in the way of discovering the amount

[Lycoming County *v.* Gamble.]

and value.    My individual opinion is, that the omission noticed
was accidental, and has not in practice been regarded.    If so
accidental, it ought to be corrected by the legislature, for there
is much of the machinery of the act dependent upon it.    But it
does not affect this case.

The Act of 12th April 1859 does not touch the question here.
Its purpose was to equalize the taxation of the *capital stock of
corporations*, made taxable by the 33d section of the Act of 1844.
It has no relation to private owners of shares of stock.    Nor has
the Act of the 1st of May 1861 any bearing on the subject.

It was passed to remove doubts about whether the companies
and associations, which were formed and purchased from the
Sunbury and Erie Railroad, the different lines of canal formerly
belonging to the state, were taxable on their capital stock for
state purposes, because that company had by the Act of 1859
been exempted from all taxation on their municipal and other
bonds and property, real and personal, until the completion of
the road and its equipment.

This act was but declaratory that these companies were liable,
like other institutions and corporations, to pay a corporation tax
to the state to be estimated on their capital stock.    Not a word
appears in the act about private owners of shares, and they
remain as is provided for by the Act of 1844.    It would have
been incongruous to have said anything other than was said in
the act, for a county tax was not assessable upon the capital
stock of corporations at all.

We need say nothing about the claim for a county tax on the
bank stock in the case stated: that was properly given up in
argument.    But we think the stock held by the defendant below,
in the West Branch and Susquehanna Canal Company, was
rightly taxable, and that so far as that is concerned, the court
erred in rendering judgment for the defendant, and for this their
judgment must be reversed.

> Now, to wit, March 28th 1864, this case came on, and
> was heard in this court, and after argument by
> counsel and consideration by the court, it is ordered
> and adjudged that the judgment of the Court of
> Common Pleas of Lycoming county in this case be
> reversed, and that judgment be entered on the case
> stated for the plaintiff, for $665.76, with costs of suit,
> and costs of this writ of error.

WOODWARD, C. J., was absent at Nisi Prius when this case
was argued.