# Dupuy v. Johns et al., Appellants.

*Taxation—Corporations—Corporations paying State tax on capital stock—Foreign manufacturing corporations—Shares in hands of owner—Taxation for county purposes—Act of June 17, 1913, P. L. 507, Sec. 1—Constitutional law—Constitution of Pennsylvania, Article IX, secs. 1 and 2—Uniform taxes—Exemption—Classification.*

1. The Pennsylvania capital stock tax is, in effect, a tax upon property represented by the capital in question; and, in making the assessment of such tax, assets outside of the State can not be considered, for no property so situated can be taxed, either directly or indirectly, by the Commonwealth or any of its political subdivisions.

2. It is the public policy of the Commonwealth to exempt from taxation corporate bodies, domestic and foreign, doing a manufacturing business in Pennsylvania, to the extent that their capital is invested within the State; also, in order to make the exemption effective, to relieve the shares of such manufacturing corporations from taxation in the hands of resident stockholders.

3. A tax on stock of foreign corporations, eo nomine, in the hands of resident shareholders, is not a tax on the property represented by the capital of the corporation, but is a personal levy against the shareholder in question, based on the value of his stock, without any intent to reach the property that gives the latter its value.

4. Under Section 1, of the Act of June 17, 1913, P. L. 507, levying a tax on personal property for county purposes, shares of stock of a foreign corporation, having assets within and without the State, part of whose capital within the State is employed in manufacturing, are wholly exempt from taxation in the hands of resident stockholders.

5. Stockholders, resident in Pennsylvania, of corporations who do no business, make no official reports and pay no capital stock tax in this State, must pay a tax on the stocks of such corporations held by them.

6. Capital stock in corporations which are bona fide engaged in business in Pennsylvania, report to the auditor general and are either liable to a State tax on capital stock or relieved therefrom by the laws of the Commonwealth, is exempt in the hands of resident shareholders from taxation.

7. The said section of the Act of 1913 does not violate Sections

1 and 2 of Article IX of the Constitution of Pennsylvania, requiring that taxes shall be uniform on the same class of subjects within the territorial limits of the authority levying the taxes, and that all laws exempting properties from taxation, other than the property enumerated therein, shall be void. The selection and classification of subjects for taxation are exclusively within the control of the legislature, the only restriction being that there must be no discrimination between members of the same class.

*Equity—Jurisdiction—Illegal collection of taxes—Injunction.*

8. In order to secure judicial review of a tax assessment the usual and proper remedy is by an appeal from the board of revision of taxes to a Court of Common Pleas, and, if desired, from that tribunal to the proper appellate court. It is not proper practice to bring a suit in equity to strike off a tax assessment and restrain the collection of a personal property tax.

Argued Feb. 5, 1918. Appeal, No. 185, Oct. T., 1917, by defendants, from decree of C. P. Allegheny Co., July T., 1917, No. 101, awarding injunction in case of Herbert Dupuy v. David B. Johns, Simon A. Merkle and John C. Kaiser, constituting the Board for the Assessment and Revision of Taxes in the County of Allegheny; E. D. Friebertshauser, Treasurer of said County of Allegheny, and Frank J. Harris, A. C. Gumbert and Gilbert Myer, Commissioners of Allegheny County. Before BROWN, C. J., POTTER, MOSCHZISKER, FRAZER and WALLING, JJ. Affirmed.

Bill in equity for an injunction. Before BROWN, J.

The opinion of the Supreme Court states the facts.

The court on hearing on bill and answer awarded an injunction. Defendants appealed.

*Errors assigned* were in dismissing exceptions to findings of fact and conclusions of law and decree of the court.

*R. W. Martin,* with him *Lee C. Beatty* and *Rose & Eichenauer,* for appellants.—Under the Act of June 17, 1913, P. L. 507, plaintiff's shares of stock can be relieved

from taxation for county purposes only on such a proportionate part of their value as the capital employed within the State of Pennsylvania bears to the total capital stock of the company: Commonwealth v. Standard Oil Co., 101 Pa. 119; Commonwealth v. N. Y., Penna. and O. R. R. Co., 188 Pa. 169; Commonwealth v. Fall Brook Coal Co., 156 Pa. 488; Commonwealth v. Lackawanna I. & C. Co., 129 Pa. 346; Commonwealth v. Lehigh Coal & Navigation Co., 162 Pa. 603; Commonwealth v. United Gas Improvement Co., 162 Pa. 602; Commonwealth v. Fall Brook Coal Co., 156 Pa. 488.

The apportionment of the value of shares of stock in foreign corporations having a portion of their capital stock employed within the State in accordance with the interpretation of the provisions of the Act of June 17, 1913, P. L. 507, contended for by defendants, is equitable, makes for uniformity of taxation and is in harmony with the construction placed by the courts on other taxing acts: Commonwealth v. Wyoming Valley Canal Co., 50 Pa. 410; Philadelphia v. Barber, 160 Pa. 123; Mercantile Library Co. v. City of Philadelphia, Etc., 161 Pa. 155; American Sunday School Union v. Philadelphia, Etc., 161 Pa. 307; Pocono Pines Assembly, Etc., v. Monroe County, 29 Pa. Superior Ct. 36; Moore v. Taylor, 147 Pa. 481; Commonwealth v. Western Union Telegraph Co., 15 W. N. C. 331; Commonwealth v. D., L. & W. R. R. Co., 145 Pa. 96; Commonwealth v. Fall Brook Ry. Co., 188 Pa. 199; Pullman's Palace Car Co. v. Penna., 141 U. S. 18; Pullman's Palace Car Co. v. Commonwealth, 107 Pa. 156.

If Section 1 of the said Act of 1913 is construed so as to relieve wholly from taxation shares of stock in all foreign corporations having a portion of their capital stock employed within the State, irrespective of the amount of the capital stock so employed, then the act grants an unlawful exemption and lacks uniformity, in violation of Sections 1 and 2 of Article IX of the Constitution of the Commonwealth of Pennsylvania: Fox's

Appeal, 112 Pa. 337; Commonwealth v. Westinghouse Air Brake Co., 151 Pa. 276; Commonwealth v. Westinghouse Air Brake Co., 251 Pa. 12.

*George E. Shaw,* of *Reed, Smith, Shaw & Beal,* for appellee.—The Act of June 17, 1913, P. L. 507, specifically excepts shares of stock in any corporation liable to the capital stock tax or exempt therefrom, and provides that corporations liable to the capital stock tax for State purposes shall not be required to make a return or pay under this act any further tax upon any securities owned in their own right. A capital stock tax under our law and a tax upon shares in the hands of an owner reaches the same property and would be double taxation: Commonwealth v. United Gas Improvement Co., 162 Pa. 602; Commonwealth v. Lehigh Coal & Navigation Co., 162 Pa. 603.

OPINION BY MR. JUSTICE MOSCHZISKER, March 25, 1918:

This is an appeal from a decree of the common pleas striking off an assessment and restraining the collection of a personal property tax.

The plaintiff is a resident of Pittsburgh; in his return for the year 1916 he failed to include certain shares of the preferred stock of the Crucible Steel Company of America, then owned by him. The concern in question is a New Jersey corporation, engaged in making steel and products thereof, the value of its total capital stock being approximately $75,000,000; of this amount, $14,000,000 is employed in Pennsylvania, and all except $29,000 exclusively in manufacturing. The company is licensed to do business in this State, and in 1916 it paid a capital stock tax on the before-mentioned $29,000, amounting to $169.17.

Plaintiff, claiming that, under section 1 of the Act of June 17, 1913, P. L. 507, his shares were exempt, refused to designate them for taxation; nevertheless, the board

made an assessment against him in the sum of $1,153,-
800, being the value of 12,820 shares at $90 each, with a
penalty of fifty per cent. added, as provided by law, for
failure to make the return, totaling, in all, $1,730,700.
At the time this assessment was levied, the stock had a
market value of $110 per share; but, since fourteen-
seventy-fifths of the capital of the company in question
was employed in Pennsylvania, on which it was either
liable to the payment of a state tax or exempt as a manu-
facturing corporation, the board assessed plaintiff's
holdings on only sixty-one-seventy-fifths of their value,
which explains the rate of $90 per share. Thereupon a
bill in equity was filed, praying that the entire assess-
ment be declared illegal and void and the collection of a
tax based thereon restrained; after hearing, the court
below granted the desired relief, and defendants have
appealed.

Section 1 of the Act of 1913 (P. L. 507, 508), supra,
makes taxable for county purposes, at the rate of four
mills on each dollar of the value thereof, inter alia, shares
of stock in both domestic and foreign corporations, "except
shares......in any......corporation......that may be
liable to a tax on its shares or its capital stock for state
purposes under the laws of this Commonwealth, or re-
lieved from the payment of tax on its shares or capital
stock for state purposes by the laws of the Common-
wealth."

The contention of appellants is that the exception just
quoted was inserted in the statute for the sole purpose
of preventing double taxation, and must be read accord-
ingly; that, when the act is so construed, appellee's
shares are exempt thereunder from tax on "only such a
proportionate part of their value as the capital stock of
the corporation employed within the state and on which
a capital stock tax is paid or which is relieved from tax-
ation by reason of its being employed exclusively in man-
ufacturing, bears to the total capital stock of the com-
pany. In other words, since only fourteen-seventy-fifths

of the capital stock of the company is employed in this state, then only fourteen-seventy-fifths of the value of the shares of such company is exempt under the exception in section 1 of said act."

The position taken by appellee is that, under the express terms of the exception contained in the Act of 1913, supra, his shares of stock are absolutely exempt from taxation; and, in appellants' printed argument, the latter admit that this construction may be warranted by the strict letter of the law, as written in the statute, but they contend (a) that, to construe the provision in question literally, would be "narrow and technical," and leaves out of view what they allege to be its sole purpose, i. e., to avoid double taxation; (b) that, if read according to its letter, the provision would be void because violative of sections 1 and 2, article IX, of the Constitution of Pennsylvania, requiring uniformity of taxation upon the same class of subjects; and (c) that, if the provision be literally interpreted, then it relieves from taxation only shares of stock in corporations which are liable to the payment of a Pennsylvania state tax on their whole capital stock or whose entire capital stock is duly exempt from such a levy by the laws of the Commonwealth, citing Sturges v. Carter, 114 U. S. 511.

We shall discuss appellants' several contentions under designations corresponding with those just used; but, before taking up their direct consideration, it seems best to state some relevant propositions, generally accepted as established, which should prove helpful in reaching a correct solution of the problems now presented for determination.

The Pennsylvania tax levied directly against corporations on capital stock is, in effect, a tax on the property represented by the capital in question (Commonwealth v. Standard Oil Co., 101 Pa. 119, 145; Commonwealth v. N. Y., Pa. & O. R. R. Co., 188 Pa. 169, 189; Commonwealth v. Curtis Publishing Co., 237 Pa. 333, 335) ; and, in making the assessment of such tax, assets outside of

the State cannot be considered (Commonwealth v. Westinghouse Air Brake Co., 251 Pa. 12, 14), for no property so situated can be taxed, either directly or indirectly, by the Commonwealth or any of its political subdivisions.

It is the public policy of the Commonwealth (Com. v. Westinghouse Co., 251 Pa. 12, 14), declared by statute (Acts of June 7, 1879, P. L. 112, 113, sec. 6, 2d proviso; June 1, 1889, P. L. 420, 431, sec. 21; June 8, 1891, P. L. 229, 238, sec. 5; June 8, 1893, P. L. 353, 355; June 7, 1911, P. L. 673, 675; July 22, 1913, P. L. 903, 905), to exempt from taxation corporate bodies, domestic and foreign, doing business in Pennsylvania, to the extent their capital is invested in manufacturing within this State; also, in order to make the exemption effective and avoid the semblance of an indirect tax, we relieve the shares of such manufacturing corporations from taxation in the hands of resident stockholders, the purpose of this policy being to build up and encourage these industries within our borders so as to gain substantial benefits therefrom.

The tax on stock of a foreign corporation, eo nomine, in the hands of resident shareholders, is not a tax on the property represented by the capital of the corporation, but is a personal levy against the shareholder in question, based on the value of his stock, without any intent to reach the property that gives the latter its value (McKeen v. Northampton Co., 49 Pa. 519; Whitesell v. Northampton Co., 49 Pa. 526; see also note to Com. v. Westinghouse Airbrake Co., 151 Pa. 276, 281), and this is the sole ground upon which such tax is sustainable.

(a) As a matter of fact, in all probability the foregoing reasons, principles and announced public policy influenced the draftsman of the Act of 1913, supra; and we must assume that they were in the minds of the lawmakers when the statute was passed. The legislature might have entirely abandoned the State policy of exemption, so far as the stockholders of foreign manufacturing companies are concerned, and authorized as-

sessments upon resident owners of the shares of such corporations, had it seen fit to do so; but evidently the lawmakers, considering the indirect benefits to be derived, preferred to relinquish the revenue which might be obtained from such taxation. In adopting this course, the legislature no doubt appreciated that, in view of the sole theory upon which a tax on foreign corporate shares, eo nomine, is maintainable (i. e., that, for purposes of the tax, they, in themselves, are a distinct species of property), it could not in any instance attempt an intangible, theoretical division of such shares into two parts, one representing capital invested in manufacturing within our State and the other extra-territorial assets, and forego the right to tax the first while authorizing an assessment on the second, without thereby admitting the levy on the latter to be an effort to reach property beyond the jurisdiction of the taxing power. In other words, an avowed attempt to assess a tax against only a fraction of each share of the stock of a foreign corporation possessed by a resident holder, upon the ground that such undivided portion gains its value from property outside of Pennsylvania, which, for that reason, cannot be taxed by this State or any of its subdivisions, would be utterly inconsistent with the only theory upon which a local assessment on such shares is sustainable, and would, in effect, convert the tax in question from one on shares of stock, eo nomine, to one upon corporate property. All of these good and sufficient reasons for writing the law as we find it, call for due consideration in construing the legislation now before us. Therefore, we cannot agree with appellants' contention that a desire to avoid double taxation must be accepted as the sole explanation of the exemption clause here in question, nor can we read its language from that standpoint alone; on the contrary, as we have endeavored to show, when the statue was drawn the effective maintenance of an important public policy was involved, and this, no doubt, influenced the phraseology

now under discussion. The words of the act must be
accepted as written, and, when so read, it is clear that
the court below did not err in declaring the shares of
stock in controversy wholly exempt from taxation.

The effect of the exemption in wholly relieving the
stock of appellee from taxation, is by no means unique or
unprecedented in the operation of our tax system; as
pointed out by counsel for appellee, shareholders of the
Pennsylvania Railroad, for example, are relieved from
individual taxation on the stock of that company, be-
cause the corporation itself pays a state tax on capital.
In calculating this latter tax, however, only the assets
of the railroad within our borders are considered, and
the stockholders go entirely free of either a direct or in-
direct tax on the very considerable value added to their
shares by the extensive extra-territorial possessions of that
corporation. In the case at bar, while the company in-
volved is a foreign corporation whose Pennsylvania capi-
tal stock tax is comparatively small, yet it has vast
assets employed in manufacturing within our State,
from which we gain enriching benefits, and this latter
fact, for purposes of entitling stockholders to exemp-
tion, is treated in the statute under consideration as
equivalent to the payment of a capital stock tax, hence,
as in the example above cited, since there can be no
tax of any character, either direct or indirect, on extra-
territorial assets, the result is that plaintiff absolutely
escapes taxation on his individual shares.

(b) The attack upon the constitutionality of the Act
of 1913, supra, has no merit, since the fundamental va-
lidity of tax immunities such as those therein provided
for is now beyond question: see opinion of McPHERSON,
J., adopted per curiam in Com. v. Germania Brewing
Co., 145 Pa. 83, where the parts of the Constitution here
in question, and their bearing upon exemption provisions
like those at bar, are ably discussed. As to the indirect
classifying effect of these immunity provisions, the selec-
tion and classification of subjects for taxation are, gen-

erally speaking, exclusively within the control of the legislature, the only restriction being that there must be no discrimination between members of the same class: Com. v. Del. Div. Canal Co., 123 Pa. 594; Com. v. Sharon Coal Co., 164 Pa. 304. For purposes of taxation upon shares in the hands of stockholders, the effect of the particular exemption clause now before us is to divide corporations into two distinct groups: (1) Those doing no business, making no official reports, and paying no capital stock tax in Pennsylvania, upon the stock of which resident shareholders must pay a tax; (2) Those which are bona fide engaged in business here, report to the auditor general, and are either liable to a state tax on capital stock or relieved therefrom by the laws of the Commonwealth, the stock of which is exempt in the hands of resident shareholders. When the underlying reasons are kept in mind, as we have endeavored to explain them, it cannot be held that this grouping is unwarranted, and, since there is no want of uniformity within the respective classes, the constitutional validity of the legislation is secure.

(c) As to appellants' last contention: The language employed in the statutory provisions under consideration cannot justifiably be construed to mean that only the stock of corporations either liable to a tax on or exempt as to their entire capital, is to enjoy exemption in the hands of shareholders. The word "entire" does not appear in the act, and we see no warrant for placing it there. Sturges v. Carter, supra, cited by appellants, is not controlling; it involves the construction of an Ohio statute which is essentially different from the one under discussion.

Another aspect of the case may be noticed. Appellants argue that, under a literal reading, the words of the Act of 1913, supra, relieve from taxation, in the hands of the holders thereof, not only stock of corporations here engaged in manufacturing, but also the stock of any corporation that pays a capital stock tax to the State, no

matter how small; and appellants express the fear that, unless we put the construction upon the statute for which they contend, foreign corporations, for the benefit of their shareholders, may seek to take an undue or improper advantage of this situation. Why shareholders of foreign corporations liable to a capital stock tax in Pennsylvania, with no apparent regard to the amount of tax paid by their companies, should be put on a par with other shareholders who enjoy tax exemption because their corporations are engaged in manufacturing within our borders, is not so clear; but we deem it unnecessary to the determination of this case to discuss that point, for, while the corporation at bar pays a small capital stock tax, the strength of appellee's position, and the fact which controls our decision, is that this particular concern comes bona fide within the manufacturing class. Moreover, if there is danger from the act as it now stands, that is for the legislature, not for us, to correct; but it may not be out of place to say that, under the ordinary rules of law, an effort to gain an undue advantage by connivance or fraud can usually be frustrated. It is not contended, however, that any such effort confronts us in the present case.

One other matter calls for notice: In a case like the present, in order to secure judicial review, the usual and proper remedy is by an appeal from the board of revision to the common pleas, and, if desired, from that tribunal to the appropriate higher court (see Act of June 26, 1901, P. L. 601; Act of June 13, 1911, P. L. 892; sec. 5, Act of June 17, 1913, P. L. 507; Van Nort's App., 121 Pa. 118, 128; D., L. & W. R. R. v. Luzerne Co. Commissioners, 245 Pa. 515, 517; Philadelphia v. Phillips, 65 Pa. Superior Ct. 578, 582-4) ; but, since equity is not entirely without power to restrain the collection of a tax (D., L. & W. R. R. v. Commissioners, supra) and no question of jurisdiction or practice is raised by either party, we have determined the points of law here involved. It must be understood, however, that this de-

cision is not to be cited in the future as an authority on correct procedure.

The assignments of error are overruled, and the decree is affirmed at the cost of appellants.