## Commonwealth v. Girard Trust Company.

*Corporations—Taxation—Capital stock tax—Trust companies—Stocks of other companies—Exemptions—Act of June 13, 1907.*

1. Where the shares of one company are held by another corporation, these shares will be considered as personal property, and do not lose their identity for the purpose of taxation unless they are shares of a corporation subsidiary to the holding company, and organized by it for the same corporate purposes which the holding company possesses and for the purpose of using property which the holding company theretofore owned.

2. There is no reason for the exemption from taxation of shares of stock merely held as an investment, unless these shares are clearly within the exempting provisions of a statute.

3. Inasmuch as the Trust Company Act of June 13, 1907, P. L. 640, contains no broader exemption from taxation, trust companies are only relieved from taxation upon shares of stock held by them in the proportion that a capital stock tax has already been paid upon such shares.

Appeal from settlement of capital stock tax. C. P. Dauphin Co., Commonwealth Docket, 1922, No. 10.

*George E. Alter*, Attorney-General, and *George Ross Hull*, Deputy Attorney-General, for Commonwealth.

*John Hampton Barnes* and *E. B. Morris, Jr.*, for defendant.

HARGEST, P. J., April 26, 1923.—This case arises on an appeal from the settlement by the Auditor General, approved by the State Treasurer, of a tax on the shares of the defendant company for the year ending June 20, 1921. A stipulation was filed dispensing with a trial by jury, pursuant to the provisions of the Act of April 22, 1874, P. L. 109. Although the case was heard April 11, 1922, briefs on both sides were not submitted to the court until Jan. 17, 1923.

Since the case was heard the defendant abandoned several of the positions raised in its specifications of appeal, and it now raises only the question of the amount of exemption to which it is entitled by reason of its ownership of shares of the capital stock of two domestic railroad companies. We, therefore, find only such facts as have a direct bearing upon that question.

### Facts.

1. The Girard Trust Company, a Pennsylvania corporation, incorporated under the Act of Assembly approved March 17, 1836, P. L. 99, conducts the business of a trust company in Philadelphia.

2. The company filed its report for the year ending June 20, 1921, under the provisions of the Act of June 13, 1907, P. L. 640. Prior to the first day of March of said year the company paid the taxes admittedly due by it, and filed

3 D. & C.

a petition for a resettlement. A resettlement was made April 28, 1921, for the year ending June 20, 1921, amounting to $57,475.66.

3. Having abandoned a number of specifications of appeal, the company has since paid on account of said taxes the amount of the settlement except the sum of $223.96.

### Discussion.

The Act of June 13, 1907, P. L. 640, imposes a tax of five mills on the actual value of the shares of stock of trust companies, to be ascertained by adding the capital stock paid in, surplus and. undivided profits, and dividing this amount by the number of shares. The act also provides, *inter alia*, as follows: "The value of each share of stock to be ascertained and fixed by adding together so much of the capital stock paid in, the surplus and undivided profits as is not invested in shares of stock of corporations liable to pay to the Commonwealth a capital stock tax or tax on shares, and dividing this amount by the number of shares of such title insurance or trust company."

The Pennsylvania Railroad Company, a Pennsylvania corporation, because of its holdings outside of the State, pays a capital stock tax of 80 per cent. of the valuation of its capital stock. For the same reason the Mahoning & Shenango Railway Company, also a Pennsylvania corporation, pays a tax of 83 per cent. of the valuation of its capital stock. The Girard Trust Company claims that, notwithstanding these railroad companies pay capital stock taxes of 80 per cent. and 83 per cent., respectively, on the total value of their capital stock, it is entitled to a deduction of the full amount invested in the capital of these companies.

There are certain important principles to be considered in determining this question:

1. The tax on capital stock is in the nature of a tax on the property and assets of the corporation: Com. v. Standard Oil Co., 101 Pa. 119.

2. There is a plain distinction between the capital stock of a corporation as a whole in the hands of the corporation and the individual shares of the shareholder in his hands: Lycoming County v. Gamble, 47 Pa. 106; Whitesell v. Northampton County, 49 Pa. 526.

3. There is no such identity between the property and assets of a corporation and its capital stock which requires the capital stock to be exempted from taxation in the same proportion that the property is exempt: Com. v. Shenango Furnace Co., 268 Pa. 283, 286.

4. The shares of the capital stock of a corporation are personal property taxable in the hands of the holder unless exempted by law: Callery's Appeal, 272 Pa. 255.

5. It is the policy of the State that all property, unless specifically exempt, should bear its fair share of taxation. But double taxation is not permitted except when imposed by clear and positive language.

6. "No tax can be collected in the absence of a provision clearly imposing it upon the class to which the taxpayer or his property belongs:" Callery's Appeal, 272 Pa. 255.

7. "Where the taxpayer or his property is within the general language of the statute imposing the tax, all exempting provisions are to be strictly construed against the claim for exemption:" Callery's Appeal, 272 Pa. 255.

8. "Provisions relating either to the imposition of or exemption from a tax are to be so construed as to give effect, as nearly as reasonably may be, to the common law duty to tax equitably and ratably all those within the given class:" Callery's Appeal, 272 Pa. 255.

These principles have recently been discussed and applied in the cases of Com. v. Westinghouse Airbrake Co., 251 Pa. 12; Dupuy v. Johns, 261 Pa. 40; Com. v. Shenango Furnace Co., 268 Pa. 283; Com. v. Hazlewood Savings and Trust Co., 271 Pa. 375; Callery's Appeal, 272 Pa. 255.

In view of these authorities, it is difficult to determine which of the principles should be applied as controlling the decision of this case.

In the case of Com. v. Westinghouse Airbrake Co., 251 Pa. 12, the defendant, a domestic corporation, having purchased a manufacturing plant in Wisconsin and another in Canada for its own convenience, organized companies in those places and owned all the stock. The Supreme Court held (page 16) that, notwithstanding the defendant was a domestic corporation and its holdings in the stock of another corporation were personal property, that by looking through the form to the substance, it appeared "to all intent and purposes that the defendant company owns these plants just as securely as if the legal title was vested in it," and relieved the defendant from tax on its own capital stock to the extent of the value of the property of the Wisconsin and Canadian companies. This case was cited with approvel in Dupuy v. Johns, 261 Pa. 40, 46, to sustain the proposition that no tax could be levied on capital stock to the extent that it was measured by property outside of the State, even though the holder of the stock was a domestic corporation. In Callery's Appeal, 272 Pa. 255, 263, however, the Westinghouse case is reviewed and attention is called to the fact that the Westinghouse Company owned the property before it incorporated the foreign companies to take over and manage that property, and that these companies were minor enterprises ancillary to its main business. It is there said (page 262) : "There the outside enterprises were but a small part of a large body; but here we have a subsidiary company operating under charter powers greater than and different from the powers of the holding company, and in no way subordinate to it—with the former exercising the powers the latter says, mistakenly, it has and exercises. Under such circumstances the subsidiary does not cease to exist, nor are its powers and property joined with those of the holding company, even for convenient taxation; although this may be done by consolidation or merger. It is not our purpose to extend the Westinghouse decision beyond the letter of its terms."

So that we now understand that where the shares of one company are held by another corporation, these shares will be considered as personal property and do not lose their identity for the purpose of taxation unless they are shares of a corporation subsidiary to the holding company and organized by it for the same corporate purposes which the holding company possesses and for the purpose of using property which the holding company theretofore owned. Thus limited, the Westinghouse case can offer no authority for the proposition that the shares of the stock of these railroad companies owned by the trust company are to be relieved of taxation to the extent and in the proportion that they represent property outside of the State.

In Com. v. Hazlewood Savings and Trust Co., 23 Dauphin Co. Reps. 244, 271 Pa. 375, the defendant appealed from the settlement of tax on its shares. It was contended that, because the stocks of certain manufacturing corporations owned by it were exempt from the payment of capital stock, it was, therefore, exempt from the payment of tax on its shares to the extent of such holdings, because, otherwise, there would be an indirect tax upon manufacturing as represented by the shares of such corporations. The court below, through Judge Sadler, specially presiding, said that the exemption in the Act of 1907 does not extend to the investments in the stock of corporations

3 D. & C.

engaged in manufacturing which *are not* liable to a capital stock tax, but only to the holdings in such corporations which·*are* liable to such tax. This part of the decision was acquiesced in and not questioned upon appeal.

In the case of Com. *v.* Shenango Furnace Co., *supra,* the defendant, a domestic corporation, caused the Shenango Steamship Company, also a domestic corporation, to be incorporated, but with entirely different charter powers. The furnace company owned all the stock of the steamship company, amounting to $750,000, but a tax was incorporated on only $25,000 of said stock. No tax was charged or paid on $725,000, because it represented property outside the State. The accounting officers included in the valuation of the shares of the furnace company a valuation of $725,000 of the shares of the stock of the steamship company, which had not paid a tax. President Judge Kunkel, whose opinion was adopted by the Supreme Court in a *per curiam,* said: "Since 1868 it has been the legislative policy to relieve from the personal property tax the shares of stock of corporations liable for a tax on their capital stock. . . . The policy arose out of the recognized identity of the capital stock and the shares composing it as one and the same subject, so that the taxation of the one is the taxation of the other, and that to tax both would amount to double taxation."

After quoting from the Act of June 17, 1913, P. L. 507, which imposes a tax on the shares of stock held or owned by individual residents or corporations of this State, "except shares of stock in any . . . corporation . . . that may be liable to a tax on its shares or its capital stock for State purposes under the laws of this Commonwealth, or relieved from the payment of the tax on its shares or capital stock for State purposes by the laws of this Commonwealth," he said:

"It is quite clear that if the transportation company's capital stock composed of these shares has been taxed, the shares themselves cannot also be taxed, and the defendant's capital stock represented by them would not be liable for the tax here claimed. But the fact is that $725,000 of the capital stock of the transportation company has not been taxed. It was not liable to taxation, because it was represented by property permanently located outside of the State. Not having been taxed, the shares are not relieved from taxation. The statute only grants relief to the shares to the extent to which the capital stock is subjected to taxation. . . . The defendant company owns all the shares. The tax on the remainder of the capital stock not having been paid, the shares in the hands of the defendant must answer for it. Unless taxed through its capital stock, they would escape taxation altogether. We do not understand the statute to mean that when the tax has been paid on part of the capital stock, the shares into which it has been divided are wholly relieved of taxation. By a literal construction of the statutory provision, such a position might be sustained, but we are bound to construe it with due regard to the reason underlying its enactment and the purpose intended to be accomplished. As we have seen, the purpose was to avoid double taxation, and the reason was the identity of the capital stock and the shares. To hold that the shares of the capital stock of a corporation, part of whose capital stock is not liable to taxation, are proportionately taxable is not to fall short of carrying out the full intention of the statutory provision.

"It is also suggested that, as capital stock and the shares composing it are to be treated as one and the same taxable subject, the taxation of the shares in the present case amounts to the taxation of property outside of the taxing jurisdiction of the State as much so as would be the taxation of the capital stock representing such property. The identity of the two, however, was not

intended to be effective except for the purpose of taxation only. Even for that purpose, they were formerly held to be separate and distinct subjects: Com. v. Standard Oil Co., 101 Pa. 119. At that time the holders of shares of the capital stock were liable to taxation on their shares, and the corporation also was liable to a tax on its capital stock in its corporate capacity: Lycoming County v. Gamble, 47 Pa. 106; McKeen v. Northampton County, 49 Pa. 519; Whitesell v. Northampton County, 49 Pa. 526. If we were to extend the identity beyond what we have indicated and to the point suggested by the defendant, the result would be that the resident holders of shares of stock in corporations, whose capital stock is not in this State and not liable to taxation here, would be relieved from the payment of a tax on the shares held by them. Surely no such result was intended by the legislation to which we have referred."

We think this case is conclusive of the question before us. In the case cited, as in the present case, both the holding company and the company whose shares were held are Pennsylvania corporations. The shareholder is here and his shares are here, within the jurisdiction of the taxing authority, even though some of the property of the corporation is outside of the State.

In the Shenango Furnace Company case, *supra*, and Com. v. McClintock-Marshall Construction Co., 25 Dauphin Co. Reps. 210, the holding company in each instance was a parent company and owned all the stock of the subsidiary company. But we conceive that it makes no difference in principle whether the holding company is a parent company, or whether it owns all or only a portion of the stock of the other company, or whether it holds the stock as an aid to carrying on its own business or holds it as an investment, because, if the shares are personal property upon which the tax has not been paid, they are taxable, under the policy of this State, to the extent that the corporation which has issued them has not paid tax thereon.

If there be any difference, the greater reason for exemption would apply to a parent company holding all the stock where the identity of the stock with the property could be more easily ascertained. But in Com. v. Shenango Furnace Co. this is held not to be reason for the exemption, and the tax was imposed on the fractional or proportionate part of the subsidiary shares untaxed in Pennsylvania. There is, therefore, no reason for the exemption of shares merely held as an investment, unless these shares are clearly within the exempting provisions of the statute.

The defendant earnestly contends, however, that this case is ruled by Dupuy v. Johns, 261 Pa. 40. In that case the plaintiff, a resident of Pittsburgh, failed to include in his tax return shares of the Crucible Steel Company of New Jersey then owned by him. The capital stock of that company was $75,000,000; $14,000,000 was employed in Pennsylvania and all except $29,000 exclusively in manufacturing. The company paid a tax on only $29,000. The plaintiff brought a bill to restrain the assessment against him of 61/75 of the value of the stock, being the proportionate part of the stock which represented property outside of the State, claiming that his shares are absolutely exempt from taxation under section 1 of the Act of June 17, 1913, P. L. 507. The Supreme Court so held, and came to that conclusion after citing the Westinghouse case, on the theory that it is the policy of the Commonwealth to exempt from taxation corporations, both domestic and foreign, doing business in Pennsylvania, to the extent that their capital is invested in manufacturing, and also that it has no power to assess a tax on the property of corporations permanently located out of the State. The learned Justice who wrote the opinion recognized the principle that the tax on the stock of a foreign cor-

3 D. & C.

poration is not directly a tax on the property, but a personal levy against the shareholder. He used this language (pages 46, 47, 48) :

"The legislature might have entirely abandoned the State policy of exemption, so far as the stockholders of foreign manufacturing companies are concerned, and authorized assessments upon resident owners of the shares of such corporations, had it seen fit to do so; but evidently the lawmakers, considering the indirect benefits to be derived, preferred to relinquish the revenue which might be obtained from such taxation. In adopting this course, the legislature, no doubt, appreciated that, in view of the sole theory upon which a tax on foreign corporate shares, eo nomine, is maintainable (i. e., that, for the purposes of the tax, they, in themselves, are a distinct species of property), it could not in any instance attempt an intangible, theoretical division of such shares into two parts, one representing capital invested in manufacturing within our State, and the other extra-territorial assets, and forego the right to tax the first, while authorizing an assessment on the second, without thereby admitting the levy on the latter to be an effort to reach property beyond the jurisdiction of the taxing power. In other words, an avowed attempt to assess a tax against only a fraction of each share of the stock of a foreign corporation possessed by a resident holder, upon the ground that such undivided portion gains its value from property outside of Pennsylvania, which, for that reason, cannot be taxed by this State or any of its sub-divisions, would be utterly inconsistent with the only theory upon which a local assessment on such shares is sustainable, and would, in effect, convert the tax in question from one on shares. of stock, eo nomine, to one upon corporate property. All of these good and sufficient reasons for writing the law as we find it call for due consideration in construing the legislation now before us. Therefore, we cannot agree with appellant's contention that a desire to avoid double taxation must be accepted as the sole explanation of the exemption clause here in question, nor can we read its language from that standpoint alone; on the contrary, as we have endeavored to show, when the statute was drawn, the effective maintenance of an important public policy was involved, and this, no doubt, influenced the phraseology now under discussion. The words of the act must be accepted as written, and, when so read, it is clear that the court below did not err in declaring the shares of stock in controversy wholly exempt from taxation."

The reason for the exemption of the shares of corporations engaged in manufacturing, which was pointed out in the case of Dupuy v. Johns, cannot apply in the case before us, because, as pointed out by Judge Sadler in Com. v. Hazlewood Savings and Trust Co., 23 Dauphin Co. Reps. 244, there is no exemption on account of manufacturing in the Trust Company Act of 1907.

The learned Justice who wrote the opinion in Dupuy v. Johns, 261 Pa. 40. stated that it is by no means unique or unprecedented in our tax system to relieve the holder of stock to the full amount of the value of the shares, and illustrated this proposition by saying that "shareholders of the Pennsylvania Railroad, for example, are relieved from individual taxation on the stock of that company, because the corporation itself pays a State tax on capital."

This, however, is not the policy or the practice with reference to trust companies. Trust companies are only relieved from taxation in the proportion that a capital stock tax has been paid upon the shares of stock held by them. The Auditor General's Department has construed the language of the Act of 1907, relieving trust companies on so much of their capital, surplus and undivided profits "as is not invested in shares of stock of corporations liable to pay to the Commonwealth a capital stock tax or tax on shares," and has

determined that—to use the stock of the Pennsylvania Railroad as an example—where the Pennsylvania Railroad pays only 80 per cent. tax on the value of its shares, the 20 per cent. invested in those shares "is not invested in shares of stock of corporations liable to pay" [and] a capital stock tax [is due]. The same question was raised in 1912 in the case of Com. v. Girard Trust Co., 16 Dauphin Co. Reps. 26, 22 Dist. R. 771, as the record of the case shows, but was neither pressed nor decided.

If there were no difference between the exemption allowed to an individual and the exemption allowed to a trust company on holdings of the shares of corporations, and no difference whether the holdings were in foreign or domestic corporations, it would be very difficult to distinguish the case of Dupuy v. Johns from the case before us. But we have just pointed out that the language of the Trust Company Act of 1907 requires such companies to pay a tax on such of its holdings "as is not invested in the shares of stock of corporations liable to pay a capital stock tax." In the application of the principle that where the taxpayer or his property is within the general language of the statute imposing the tax, the exempting provision should be strictly construed, there are strong reasons for holding that trust companies are not exempt from [taxation on] investments in the shares of corporations to the extent that those corporations have not paid a capital stock tax. The exemption contained in the Personal Property Act is quite different. It provides "that shares of stock of a corporation are liable to tax, except shares of stock . . . that may be liable to a tax on its shares or its capital stock for State purposes, . . . or relieved from the payment of a tax on its shares of capital stock for State purposes by the laws of this Commonwealth."

We understand, however, that in Callery's Appeal, 272 Pa. 255, the Supreme Court has itself drawn the distinction between an individual who holds the stock of a foreign corporation and a domestic corporation which holds the stock of another domestic corporation. In that case Mr. Justice Kephart, writing the opinion of the court, said (page 266) :

"If Gulf Oil were a domestic corporation, owning intangible assets located in another state, Pennsylvania would be the taxable domicile of such assets: Com. v. Semet-Solvay Co., 262 Pa. 234, 236. Or if both Gulf Oil and Gulf Refining were domestic corporations, under the state of facts here presented, it would, when settling the capital stock tax of the former, or holding company, be liable for the fractional or proportionate part of the value of its subsidiary's shares, untaxed in Pennsylvania, as such fractional part adds value to the capital stock to be taxed. Though such intrinsic value of shares may be out of the State (Com. v. Shenango Furnace Co., 268 Pa. 283), shares of a corporation held by a domestic corporation are not taxed under a personal property tax. The Act of 1913 does not make such ownership taxable (see Com. v. Lehigh Coal & Navigation Co., 162 Pa. 603, on earlier legislation), but the value of the stock thus held adds to the general value of the capital stock of the holding corporation, to be deducted as the whole or part pays a State tax; but in personal property levies the tax is computed on the value of the shares, qua shares, and the Act of 1913 does not contemplate a fractional division of such value: Dupuy v. Johns, 261 Pa. 40."

This language describes the situation here. The Girard Trust Company, the Pennsylvania Railroad Company and the Mahoning & Shenango Railway Company are all Pennsylvania corporations. The trust company is organized for an entirely different purpose from that of the railroad companies. It owns only a small part of the shares of the capital stock of each of the railroad companies.

3 D. & C.

We, therefore, conclude that the Girard Trust Company is not entitled to exemption on the full value of its investment in the shares of capital stock of the Pennsylvania Railroad Company and the Mahoning & Shenango Railway Company, but is only entitled to exemption on such proportionate parts of the value of such shares as have been assessed and on which a capital stock tax has been paid.

| | |
|---|---:|
| Balance of settlement due Commonwealth | $223.96 |
| Interest from June 27, 1921, being sixty days after date of settlement | 24.51 |
| Total | $248.47 |
| Attorney-General's commission, 5 per cent | 12.43 |
| Total | $260.90 |

Judgment is hereby directed to be entered in favor of the Commonwealth and against the defendant for the said sum of $260.90, unless exceptions be filed within the time limited by law.

From William Jenkins Wilcox, Harrisburg, Pa.