## Personal Property Tax on Stock of Foreign Corporations

22

MARGIOTTI, Attorney General, November 19, 1935.—
We have your request to be advised whether the shares
of stock of foreign corporations, heretofore exempt from
the 4 mills personal property tax because the issuing
corporations were subject to, or relieved from, the capi-
tal stock tax, have now been made subject to the 1 mill
personal property tax for State purposes imposed by the
Act of June 22, 1935, P. L. 414.

This question arises because the Act of May 16, 1935,
P. L. 184, substituted a franchise tax on foreign corpora-
tions in lieu of the capital stock tax on such corporations,
whereas the Act of June 22, 1935, followed the language
of the 4 mills personal property tax Act of June 17,
1913, P. L. 507, as amended, in excepting from the tax
the shares of stock issued by corporations liable to, or
relieved from, tax on capital stock. Each act subjects
to tax all shares of stock owned by resident individuals,
and then in identical language provides (Act of 1913,
sec. 1; Act of June 22, 1935, sec. 3) :

". . . except shares of stock in any bank, corporation,
or limited partnership that may be liable to a tax on its
shares or its capital stock for State purposes under the
laws of this Commonwealth, or relieved from the pay-

ment of tax on its shares or capital stock for State purposes by the laws of the Commonwealth".

Under this exception, before the enactment of the Act of May 16, 1935, shares of stock of foreign corporations owned by resident individuals were exempted from the 4 mills tax; and the exemption has been held to apply to the full value of such shares regardless of the fact that the issuing corporation may have been liable for capital stock tax on only a small portion of the value of its entire capital stock: Dupuy v. Johns et al., 261 Pa. 40.

The exception recognizes a long standing and equitable policy of the legislature to avoid double taxation. Historically, Pennsylvania has sought to tax either the capital stock to the corporation or the shares to the owner, but never both: Commonwealth v. Fall Brook Coal Co., 156 Pa. 488 (1893). In Commonwealth v. Shenango Furnace Co., 268 Pa. 283, 285 (1920), the court said:

"Since 1868 it has been the legislative policy to relieve from the personal property tax the shares of stock of corporations liable for a tax on their capital stock. . . . The policy arose out of the recognized identity of the capital stock and the shares composing it as one and the same subject, so that the taxation of the one is the taxation of the other and that to tax both would amount to double taxation. . . ."

We believe that the legislature did not intend to remove, or alter the scope of, this historic and equitable exemption contained in the separate Acts of 1913 and June 22, 1935, when, by amendments to the Capital Stock Tax Act of June 1, 1889, P. L. 420, it substituted a franchise tax for the existing capital stock tax on foreign corporations. We are of the opinion that this traditional policy of Pennsylvania against double taxation could not be changed without clear, unambiguous and affirmative language by the legislature.

It has, however, been suggested that such an intention may be implied from the changes made by the legislature

in house bill 925 (which became the Act of June 22d) between its introduction and its final passage.

House bill 925 originally included the words "franchise tax" in the provision designating the types of corporations whose stocks were to be exempt from personal property tax in the hands of resident owners. This language, as we will later show, was not strictly necessary, but was included for greater clarity. These words were, however, deleted two days before the adjournment of the session (house bill 925, printer's no. 1616, as rereported from the Committee on Finance in the Senate on June 19, 1935). This change was not made for the purpose of imposing a personal property tax on the shares of foreign corporations liable to pay a franchise tax but for an entirely different and sufficient reason.

On June 19, 1935, the Act of 1913, which imposes the 4 mills personal property tax for county purposes, was not before the legislature and, therefore, its exempting language could not have been amended during the last two days of the session to accord with the exempting language contained in house bill 925 prior to June 19, 1935.

Until the amendments of June 19th, house bill 925 imposed a 6 mills personal property tax and provided for the collection of the entire 6 mills by the State. Under such a plan the imposition and exemption language in house bill 925 would have covered the whole personal property tax field. When, on June 19, 1935, house bill 925 was amended so as to impose only a 1 mill State tax and to permit the State to collect such tax, two complete and independent collection agencies were established, or rather, the former county agency was retained, without change, to collect the old county 4 mills tax under the Act of 1913, which was to remain in effect, and the State was named the agency to collect the new State personal property tax of 1 mill. Since this change came so late in the session, it was not possible to make the exempting language of section 1 of the Act of 1913 accord with the exempting language in house bill 925, so the

converse procedure was followed, and the exempting language in house bill 925 was made to accord with the exempting language of section 1 of the Act of 1913. Inasmuch as the 1 mill tax and the 4 mills tax are on exactly the same classes of property, and have precisely the same incidents and characteristics, it will readily be seen that it would have been ridiculous and of questionable constitutionality to have had the exempting language read differently under each act. Likewise, it will be appreciated that, in view of the fixed date for adjournment on June 21st, it would have been procedurally impossible on June 19th to have introduced and caused to be passed a bill to amend section 1 of the Act of 1913 in such manner as to have brought the exempting language in that section into accord with the exempting language in house bill 925 as it read prior to the amendment on June 19th.

That the intention of the legislature was not to impose the personal property tax upon shares of stock of corporations liable to pay the franchise tax is supported by other changes which were made in the exempting language under consideration while house bill 925 was before the legislature. This language, as it stood until the bill was amended on June 19, 1935, provided for only a proportionate exemption of shares from personal property tax. Such exemption was to be in the same ratio and to the proportionate extent that the corporation, whose shares they were, was subject to or relieved from the payment of a capital stock tax in Pennsylvania. It was decided to be proper to retain the full exemption traditionally accorded such shares, and hence the change was made on June 19th by way of an amendment to the bill. This reëstablishment of the exemption as it had previously existed showed conclusively an intention on the part of the legislature not to alter it at all.

Furthermore, it is clear that the legislature, in enacting the franchise tax, intended to adopt a tax admittedly of a different species than the tax for which it was substituted

but still of the same genus, in that the tax is measured in part by the value of the capital stock. The franchise tax is an excise tax, whereas the Pennsylvania capital stock tax is a property tax; but the franchise tax uses the value of the capital stock of foreign corporations to determine the amount of tax. This, we believe, is sufficient to bring the franchise tax within the excepting language above quoted.

This conclusion is inescapable when we consider the provisions of the Act of May 16, 1935.

A new tax is ordinarily imposed in a separate act, not as an amendment to an existing act imposing a tax of a wholly different character. The fact that the Act of May 16, 1935, imposing the franchise tax, is an amendment to the Capital Stock Tax Act of 1889 itself suggests that the legislature considered the franchise tax to be a tax measured in part by the value of the capital stock. In this connection, the wording of the title of the Act of 1935 is significant. It provides:

"To further amend sections twenty and twenty-one of the act, approved the first day of June, one thousand eight hundred and eighty-nine (Pamphlet Laws, four hundred twenty) . . . *by substituting a franchise tax on foreign corporations in lieu of the capital stock tax on such corporations*". (Italics ours.)

It is obvious that the legislature, by enacting the franchise tax, intended to impose a tax on foreign corporations more nearly comparable in amount to the tax imposed upon the capital stock of domestic corporations than was the case theretofore.

In addition, the mere substitution of a franchise tax for the capital stock tax, effected by the Act of May 16, 1935, cannot possibly result in the extension of the personal property tax to subject a wholly new class of property to taxation. That act does not give the slightest notice of a purpose to change the personal property tax exemption contained in the Act of June 17, 1913, P. L.

507, which is likewise carried into the Act of June 22, 1935, P. L. 414. If the Act of May 16, 1935, P. L. 184, were intended to result in the imposition of a personal property tax upon the shares of stock of foreign corporations, the taxpayers should have been given notice of it by an appropriate amendment to the Act of 1913 with an appropriate title and a corresponding reference in the Act of June 22, 1935. It is not legally possible to extend a tax act to a whole new class of subjects by mere implication or inference, particularly where that class, as we have indicated, has been traditionally exempt in the past for the purpose of avoiding double taxation. The legislative intent so to extend the act must be unequivocal, and clearly expressed.

The equitable aspects of the question under consideration are, of course, obvious. Under the franchise tax, most foreign corporations will pay a proportionately larger tax than heretofore. What they will pay will be commensurate with the tax paid by domestic corporations. This was the result the legislature sought to obtain. Many foreign corporations have not a dollar invested outside of Pennsylvania. Such corporations will pay a franchise tax approximating in amount the capital stock tax payable by similarly situated domestic corporations. It is inconceivable that the Act of May 16, 1935, is to be invoked as a reason for also imposing an additional tax on the full value of the shares of the stock of such foreign corporations in the hands of the holders when no such tax is imposed on the holders of the stock of the domestic corporations. The legislature never intended any such discriminatory and unfair consequences. As to those foreign corporations having capital invested elsewhere, the same discrimination would result. It would be less obvious, but not less actual.

We are, therefore, of the opinion, and advise you, that the shares of stock of foreign corporations are not subject to the 1 mill personal property tax imposed by the Act of June 22, 1935, P. L. 414, if the issuing corpora-

tions are liable to or are relieved from the payment of the franchise tax imposed by the Act of May 16, 1935, P. L. 184.  From Frederic Ray, Harrisburg.