## Pennsylvania Company, etc., Trustee, Case.

Argued April 27, 1942. Before SCHAFFER, C. J.; MAXEY, DREW, LINN, STERN, PATTERSON and PARKER, JJ.

131

*E. Russell Shockley,* Deputy Attorney General, with him *F. Gilman Spencer,* Special Deputy Attorney General, and *Claude T. Reno,* Attorney General, for appellant.

*Maurice Bower Saul,* with him *Francis H. Bohlen, Jr.,* and *Saul, Ewing, Remick & Harrison,* and *Leighton P. Stradley* and *Leighton P. Stradley, Jr.,* of *Stradley, Ronon & Stevens,* for appellee.

*Abraham L. Shapiro,* with him *Abraham Wernick,* Assistant City Solicitors, and *Francis F. Burch,* City Solicitor, for City of Philadelphia, under Rule 61.

OPINION BY MR. JUSTICE PARKER, June 29, 1942:

Appellee, as trustee for an investment trust, on January 1, 1940, held shares of twelve foreign insurance companies which had been authorized to do business in Pennsylvania and were subject to and had been paying a two per cent tax on gross premiums received from business done within this Commonwealth. The tax was imposed under section 24 of the Act of June 1, 1889, P. L. 420, as amended (72 PS §2261). The Department of Revenue assessed against the trustee the state personal property tax on these shares. On appeal, a court of common pleas held that the tax sought to be imposed was unconstitutional and struck off the assessment. The Commonwealth has appealed to this court.

Appellee thus states the question involved: "Has the Legislature of this Commonwealth the constitutional power to abandon the exemption previously granted and to levy a personal property tax upon the resident holders of shares in foreign insurance corpora-

tions already within the jurisdiction of this Commonwealth and liable for the gross premiums tax payable under Section 24 of the Act of June 1, 1889, P. L. 420, as amended, while continuing the exemption of shares in domestic insurance corporations and of shares in other corporations liable for the shares tax, or the capital stock tax or the franchise tax imposed by Section 21 of the same Act of 1889, as amended?"

The court below sustained the position of appellee, holding that the act under which the tax was sought to be imposed contravenes the uniformity provisions of Art. IX, §1, of the Constitution of Pennsylvania, constitutes a deprivation of property contrary to Art. I, §9, of the same constitution, and operates as a denial of equal protection of the laws as guaranteed by §1 of the Fourteenth Amendment of the Constitution of the United States.

The controversy arises by reason of exemptions, which appellee claims are discriminatory, granted by the legislature to certain classes of corporations. It is necessary to an understanding of the force of these exemptions, allowed to resident holders of stock, to review historically the pertinent legislation. Section 21 of the Act of 1889, P. L. 420, imposed a capital stock tax on both domestic and foreign corporations, but *foreign* insurance companies were expressly excepted from this tax. By section 24 of the same statute a tax was imposed on gross annual premiums received by insurances companies from business done within this Commonwealth. The rate fixed was two per cent for foreign insurance companies and eight mills for domestic insurance companies, the latter being subject to the capital stock tax under section 21. An amendment to section 21 by Act of May 16, 1935, P. L. 184, made the capital stock tax applicable only to domestic corporations and imposed a franchise tax on foreign corporations. The new franchise tax applied the same rate as the capital stock tax to the same fundamental base, that is, capital

stock, but by formula endeavored to reach only the fractional part of the whole capital stock allowable to business done within the Commonwealth. This new franchise tax was not imposed on foreign insurance companies, but they and domestic insurance companies remained and still remain liable to payment of the gross premiums' tax.

We need not, for present purposes, review the legislative history of the state personal property tax on shares held by residents of the state prior to 1935. The Act of June 22, 1935, P. L. 414, imposed a state tax of one mill on shares of stock held by a resident either in his own right or as trustee "except shares of stock in any . . . corporation . . . that may be liable to a tax on its shares or its capital stock for State purposes . . ., or relieved from the payment of tax on its shares or capital stock for State purposes." The first part of this exception, of course, exempted shares in domestic insurance corporations, and in *Miller's Estate,* 330 Pa. 477, 199 A. 148, we held that the second part exempted shares of foreign insurance companies as they were "relieved" from the payment of the capital stock tax. By Act of May 18, 1937, P. L. 633, the tax on shares held by residents was increased to four mills and the prior act was amended so that the particular language interpreted in *Miller's Estate,* supra, was omitted and the exception was changed to read "except shares of stock in any . . . corporation . . . liable to a tax on its shares or a capital stock or franchise tax for State purposes under the laws of this Commonwealth." By the Act of May 5, 1939, P. L. 76, the exception was again amended so as to read, "except shares of stock in any . . . corporation . . . liable to a tax on its shares or the capital stock tax or franchise tax imposed by section twenty-one of the act, approved the first day of June, one thousand eight hundred eighty-nine (Pamphlet Laws, four hundred twenty), and its amendments and supplements."

The language of the 1939 amendment is so exact and definite and the intention of the legislature so free from ambiguity that resort to rules of construction is neither justified nor necessary. The gross premiums' tax imposed by section 24 of the Act of 1889 is certainly not the capital stock or franchise tax imposed by section 21. It is apparent, therefore, that the legislature removed the exemption heretofore existing and that it intended to make a resident owner of stock in a foreign corporation subject to a tax on his shares.

The lower court correctly construed the statute in that respect, but held that it was unconstitutional as violating Art. IX, §1, of the Constitution of the Commonwealth and the Fourteenth Amendment to the Constitution of the United States. It is not necessary to discuss the two constitutional provisions separately. "As applied to questions of taxation, the constructions of the two enactments run together. That which would violate one would generally contravene the other": *Com. v. Girard Life Ins. Co.,* 305 Pa. 558, 562, 158 A. 262. We note in passing, as does the amicus curiae in its brief, that this "does not mean, however, that a statute may not be declared unconstitutional as violative of our State Constitution, though the Federal Courts have held similar statutes not violative of the Federal Constitution."

We are of the opinion that the court below erred in holding the exemption clause of the personal property tax act, as amended by the Act of 1939, to be unconstitutional. Not only does our constitution require that taxes "shall be uniform, upon the same class of subjects", but by Art. IX, §2, the General Assembly is prohibited from passing any special law exempting property from taxation. However, those sections do not prohibit a proper classification of the subjects of taxation; all that they require is that the tax shall be uniform upon members of a class. The fundamental question therefore becomes whether the legislature properly exercised its power of

classification when it placed owners of shares of foreign insurance companies in a different class from owners of shares in domestic insurance companies.

It is well settled that a state legislature may without violation of the Constitution of the United States place stock of domestic and foreign corporations in different classes for purposes of taxation so long as there is a reasonable basis for the classification: *Kidd v. Alabama*, 188 U. S. 730, 23 S. Ct. 401; *Darnell v. Indiana*, 226 U. S. 390, 33 S. Ct. 120. The state may tax a corporation and also tax holders of stock: *Klein v. Board of Tax Supervisors of Jefferson County, Ky.*, 282 U. S. 19, 23, 51 S. Ct. 15. In *Kidd v. Alabama*, supra, it was said: "We see nothing to prevent a state from taxing stock in some domestic corporations and leaving stock in others untaxed on the ground that it taxes the property and franchises of the latter to an amount that imposes indirectly a proportional burden on the stock. When we come to corporations formed and having their property and business elsewhere, the state must tax the stock held within the state if it is to tax anything, and we now are assuming the right to tax stock in foreign corporations to be conceded. If it does tax that stock, it may take into account that the property and franchise of the corporation are untaxed, on the same ground that it might do the same thing with a domestic corporation."

Article IX, §1, of our own constitution does not forbid, in a proper case, classification for tax purposes between different kinds of domestic corporations (*Com. v. Germania Brewing Co.*, 145 Pa. 83, 22 A. 240; *Com. v. Mortgage Trust Co.*, 227 Pa. 163, 76 A. 5), between stock and purely mutual beneficial insurance companies (*Com. v. Girard Life Ins. Co.*, supra, affirmed 287 U. S. 570, 53 S. Ct. 94), between shares of stock of such companies (*Com. v. Pa. T. & F. M. Cas. Ins. Co.*, 339 Pa. 62, 14 A.2d 295), or between stock in domestic and stock in foreign corporations generally (*Dupuy v. Johns*, 261 Pa. 40, 46, 104 A. 565).

As we have seen, the constitutions do not forbid separate classification of domestic and foreign corporations generally and there is strong reason why domestic and foreign insurance companies may be so classified for tax purposes. It is apparent from the nature of their business that the ·volume of business done by an insurance company in a state other than the state in which it is incorporated and the corresponding protection and advantages it enjoys in such state bear little relation to the capital invested in such foreign state. They therefore may and in the interest of a fair distribution of the tax burden should have different treatment.

Mr. Justice ROBERTS, in *State Board of Tax Commissioners of Indiana v. Jackson,* 283 U. S. 527, 537, 51 S. Ct. 540, sums up the constitutional principle in this manner: "The fact that a statute discriminates in favor of a certain class does not make it arbitrary, if the discrimination is founded upon a reasonable distinction. . . . A very wide discretion must be conceded to the legislative power of the state in the classification of trades, callings, businesses, or occupations which may be subjected to special forms of regulation or taxation through an excise or license tax. If the selection or classification is neither capricious nor arbitrary, and rests upon some reasonable consideration of difference or policy, there is no denial of the equal protection of the law. It is not the function of this Court . . . to consider the propriety or justness of the tax. . . . Our duty is to sustain the classification adopted by the Legislature if there are substantial differences between the occupations separately classified. Such differences need not be great."

While a foreign corporation, as an admission fee or condition precedent to its admission to do business within the state, may be subjected to unequal taxation *(Hanover Fire Ins. Co. v. Carr,* 272 U. S. 494, 510, 47 S. Ct. 179, 183; *Nugent Funeral Home, Inc., v. Beamish,* 315 Pa. 345, 348, 173 A. 177), when once within the jurisdiction it may not be arbitrarily and oppressively dis-

criminated against in favor of similar domestic corporations: *Southern Railway Co. v. Greene*, 216 U. S. 400, 30 S. Ct. 287; *Louis K. Liggett Co. v. Baldridge*, 278 U. S. 105, 49 S. Ct. 57; *Nugent Funeral Home, Inc., v. Beamish*, supra (p. 349).

Although it is the shares in the hands of residents of this state that are taxed, the appellee bottoms its claim of discrimination on the taxes levied on the respective corporations. It contends that the exemptions were granted by the legislature to avoid double taxation, that the foreign insurance companies pay the same taxes, taken as a whole, as are paid by domestic insurance companies, and that there was thereby disclosed an arbitrary discrimination against holders of foreign insurance company stock.

The taxes imposed on the two classes are not the same. The domestic insurance company is required to pay the capital stock tax and eight-mill tax on gross premiums received from business done within this state while foreign insurance companies pay no capital stock or franchise tax but pay a two per cent tax on gross premiums received from business done within this state. The taxes are of different kinds and are imposed at different rates on different bases. There is no evidence in the record in this case which would form the basis for a finding that the taxes paid by the two classes of corporations are mathematically equivalent.

The legislature, having the right to tax the corporation and also the right to tax the holders of stock of such corporation, imposed both taxes. In an endeavor to give some relief from double taxation it has provided for exemptions, at the same time endeavoring to equalize the burden. It was as a matter of policy and not by reason of any absolute right that the exemptions were granted. "By reason of the presumption of validity which attends legislative and official action one who alleges unreasonable discrimination must carry the burden of showing it": *Concordia Fire Ins. Co. v. Illinois*, 292 U. S. 535,

547, 54 S. Ct. 830, 834. There might be a point at which the taxes paid by a foreign corporation and those paid by the owners of shares in that corporation are so far out of line with similar taxes paid by domestic corporations and the owners of shares in such corporations that the result produced could be said to be arbitrary and oppressive. There has been a complete failure upon the part of the appellee to show that the net result of the different taxes has produced such a condition.

The learned judge of the court below, who considered this subject with unusual care, states that he would have reached the same conclusion that we have if he had not felt bound by his understanding of the language used in *Girard Trust Co., Trustee's Appeal,* 333 Pa. 129, 3 A.2d 252. We said in that case (p. 137) "that the gross premium tax of two per cent is equivalent to the capital stock and premium tax paid by other insurance companies within the spirit and purpose of the exemption provisions"; i.e., as a matter of statutory construction we deemed that in exempting shares of corporations which paid a capital stock tax the legislature intended to include those of corporations which paid a gross premium tax. The words used certainly did not and could not mean that the two taxes are mathematically equivalent or approximately equal. There was no proof there, as there was not here, that the taxes were quantitatively equivalent. It was particularly noted in that case that mathematical equivalence was not required.

It might be argued that many of the cases to which we have referred dealt with situations where a tax was imposed on the shareholders of a foreign corporation and the corporation itself was beyond the reach of those taxing authorities. The case of *Klein v. Board of Tax Supervisors of Jefferson County, Ky.,* supra, is an answer to that suggestion for there there was a tax imposed on the corporation and a tax was imposed on the shareholders dependent upon the amount of the corporation's taxable property in the state, and the question of

net result was involved. That case supports the conclusion reached here. The legislature has done all that was required of it in approximating justice by a classification resting on reasonable grounds.

The judgment of the court below is reversed and it is directed that judgment be entered for the Commonwealth for the amount of the tax claimed, appellee to pay the costs.