CONCRETE STEEL COMPANY *v.* METROPOLITAN CASUALTY INSURANCE COMPANY OF NEW YORK.

HERMITAGE PORTLAND CEMENT COMPANY *v.* SAME.

TRUSCON STEEL COMPANY *v.* SAME.

[Nos. 13,749–13,751. Filed July 3, 1930. Rehearing denied November 19, 1930. Transfer denied February 2, 1933.]

*Will R. Manier, Jr., Larkin E. Crouch, Frank H. Hatfield, Louis L. Roberts,* for appellants.

*Pickens, Davidson, Gause, Gilliom & Pickens,* and *Noel, Hickam, Boyd & Armstrong,* for appellees.

McMAHAN, J.—On May 11, 1927, Charles F. Hanley and J. Howard Laughlin, doing business under the name

of Peerless Constructing Company, entered into a contract with the city of Tell City for the improvement of certain streets, and in that connection, they, as principals, with appellee insurance company as surety, executed a bond in the sum of $119,000, in which the city is named as obligee, conditioned that the construction company should faithfully and fully perform the contract according to the strict terms thereof, and expressly stipulating that "any person or persons, firm or corporation having unpaid claims for labor performed on the improvements required by this contract and required by these specifications, or for tools or materials furnished them to be used in or upon said improvement, may recover the same in an action or actions in their own names on this bond."

The Concrete Steel Company, appellant in No. 13,749 and the Truscon Steel Company, appellant in No. 13,751, each furnished said contractors steel and iron required and used in constructing said streets under said contract. The Hermitage Portland Cement Company, appellant in No. 13,750, furnished cement. Each appellant, as plaintiff, filed a complaint against said contractors and said insurance company on said bond to recover the balance owing each of them for the material so furnished and used in the construction of said streets. A demurrer was sustained to each complaint. This was followed by an appeal by each plaintiff and a consolidation of the three appeals for briefing and decision.

The complaint neither alleges that the plaintiff within sixty days after the last item of material was furnished nor at any other time, filed with the common council of the city or with any other board or office of the city, a verified statement of the amount due and owing plaintiff by said contractor. Each complaint was filed within one year from the date when the material was furnished.

Section 10284 Burns 1926, Clause 25, §53, Acts 1905,

p. 246, gives the common council of every city the power "to compel persons about to undertake dangerous improvements to execute bonds, with sufficient surety, conditioned that the owner or contractor will pay all damages that may be sustained by any person from such work." Section 10342 Burns 1926, §95 of the Municipal Code of 1905, Acts 1905, p. 281, gives the council authority to "impose further conditions upon bidders with regard to bond and surety, guaranteeing the good faith and responsibility of such bidders, or insuring the faithful completion of such work according to contract, or for keeping the same in repair for any length of time, or for any other purpose." This section gave the common council of the city of Tell City authority to require a bond for the protection of materialmen and laborers, as well as for the protection of the city, and each appellant was authorized to maintain an action thereon in its own name for materials furnished. *Aetna Indemnity Co.* v. *Indianapolis, etc., Fuel Co.* (1912), 178 Ind. 70, 98 N. E. 706; *U. S. Fidelity, etc., Co.* v. *American Blower Co.* (1908), 41 Ind. App. 620, 84 N. E. 555. There is nothing in the above mentioned sections of the statute requiring that materialmen shall file with the common council, or with any other officer or representative of the city, a verified statement of his account, or a statement showing the amount due and owing on his account.

Appellee insists there can be no recovery for the reason that neither appellant, within sixty days after the last item of material was furnished, filed with an officer of the city a duplicate verified statement of the amount due and owing in accordance with the provisions of §6122 Burns 1926, which is section 2, Ch. 173, Acts 1911, as amended in 1925, Acts 1925, p. 129.

Section 1 of the act of 1911, provides that all boards of trustees of state institutions and commissioners ap-

pointed for the building of state buildings, county commissioners, township trustees, or any county or township boards authorized to contract for any public building or improvement, and officers or boards of state, county or township authorized to distribute funds and pay contractors, shall withhold full payment to the contractor until such contractor has paid the subcontractors or laborers employed, all bills due and owing them, with provision that if there is not a sufficient amount owing the contractor to pay such bills in full, the same shall be paid pro rata, and that the subcontractors or laborers shall file with the proper officer or board or commission their claim within thirty days from the completion of the work. Section 2 of this act provides that in all contracts for the construction of the state, county or township buildings or other public improvements, provision shall be made in the contract for the payment of labor and subcontractors by withholding funds sufficient from the contract price to pay for all labor and material and subcontractors, and that the bond given by the contractor be conditioned so that the sureties shall be liable for labor, material, and to the subcontractor, provided such parties shall file their claims within thirty days after the labor is performed or the material furnished.

Section 3 is as follows: "This act shall not be construed as conflicting with any other laws for the protection of labor, subcontractors or materialmen, but is supplemental thereto."

In *Illinois Surety Co.* v. *State ex rel.* (1911), 69 Ind. App. 450, 122 N. E. 30, 31, George B. Lynch entered into a contract for the improvement of certain highways pursuant to §8393 Burns 1926, §7723 Burns 1914, Acts 1905, p. 521, §74, which provides inter alia that each bidder shall, with his proposal submit his bond payable to the state, conditioned for the faithful performance of the work, and that such bond shall be for the benefit of

any person who shall suffer loss or damages by reason of any failure or neglect to pay for any labor or material. The contract and bond involved in that case were exacted in November, 1911, which was after the Act of 1911 went into force. The relator, a materialman, failed to file its claim with the board of commissioners within thirty days after furnishing the material. In response to the contention of the surety that there could be no recovery because the claim had not been filed in accordance with the Act of 1911, the court said: "But that procedure is not exclusive, and the failure to adopt the method certainly did not preclude the relator from obtaining judgment against Lynch. But appellant insists that because of that failure there can be no recovery against the surety on the bond. There is nothing in the statute, nor in the contract for the performance of which the bond was given, which made it obligatory on the relator to file its claim with the board of commissioners, either for its own benefit or for the protection of the surety on the bond. Since the procedure provided by the statute is a mere privilege, of which the relator might have availed itself at its option, appellant cannot escape liability merely because the relator did not intercept the contractor's pay and apply it on the claim." To the same effect see *Equitable Surety Co.* v. *Indiana Fuel, etc., Co.* (1919), 70 Ind. App. 75, 123 N. E. 22, where the court, speaking of the Act of 1911, said: "This statute was designed to further protect the parties named therein, as it expressly declares. The construction thereof contended for by the appellant would deprive these persons of rights they theretofore had, and make any right they sought to enforce dependent upon the doing by claimant of a preliminary act, filing his claim within thirty days, etc. Such a construction would turn the act in question in one for the protection of bondsmen on contractors' bonds, by having the effect of

limiting the liability, and would in no way give additional protection to those who are, by its express terms, made within its provisions."

These two cases were followed in *U. S. Fidelity, etc., Co.* v. *State, ex rel.* (1919), 71 Ind. App. 648, 125 N. E. 420, and in *Equitable Surety Co.* v. *State, ex rel.* ██ (1919), 71 Ind. App. 702, 125 N. E. 202, and it is a well settled rule of statutory construction that where a statute has been construed by the courts of a state, and is thereafter substantially re-enacted, the legislature thereby adopts such construction unless the contrary is clearly shown by the language of the act. *State* v. *Ensley* (1912), 177 Ind. 483, 97 N. E. 113, Ann. Cas. 1914D, 1306. In view of this rule we hold that the legislature, when the amendatory statute of 1925 was enacted, thereby adopted the construction theretofore placed on such statute in *Illinois Surety Co.* v. *State, ex rel., supra,* wherein it was held that the procedure provided for by that statute is not exclusive but is a privilege of which a person performing labor or furnishing material may avail himself at his option. We need not and do not rest our decision in the instant case wholly upon the above mentioned rule of construction.

In 1925, the legislature, with knowledge of the construction which this court had placed on said Act of 1911, amended sections 1 and 2 of said act, Acts 1925, p. 129, §§6121, 6122 Burns 1926. Section 1 as amended provides that when any public work or improvement is being made "under contract at the expense of the state or at the expense of any county, city, town, township, school corporation or any other political subdivision or commission created by law" final payment shall be withheld until subcontractors, materialmen and laborers are paid in full. The time for filing claims is extended from thirty days to sixty days, and it is provided that the

surety of the contractor shall not be released until the expiration of one year after the final settlement with the contractor. Section 2, as amended, provides that all contracts for the construction, erection, alteration, or repair of any public building or any other public work or improvement of any character whatsoever, as provided in section 1 of the act, shall make provision for the payment of subcontractors, laborers and materialmen by withholding funds from the contract price sufficient to pay such subcontractors, laborers and materialmen; that the contractor shall execute a bond, payable to the state, conditioned among other things for the payment by the contractor of all indebtedness on account of labor rendered and materials furnished; that any person to whom money shall be due on account of labor or materials shall, within sixty days after the labor is completed or after the last item of material is furnished, file with the board, commission, etc., entering into the contract with the contractor, duplicate verified statements of the amount due and owing; that no suit shall be commenced against the sureties on such bond until after the expiration of sixty days after filing such statements; that if the claim is not paid within thirty days, suit can be commenced on the bond, and which suit shall be commenced within one year from date of filing duplicate statements; and unless suit is commenced within such period it shall be barred as to such sureties. Section 3 of the Act of 1911 was not in any way amended or affected by sections 1 and 2 as amended in 1925.

In arriving at the effect of the amendments to sections 1 and 2 of the Act of 1911, we must consider the amendments as a part of the original act, and the entire act, which includes section 3, must be given the same effect as if §§1 and 2, as amended, had been a part of the original act, and as to all matters there-

after occurring, such amendments are to be taken and construed the same as if they were a part of the act as adopted in 1911. *Blair* v. *Chicago* (1906), 201 U. S. 400, 475, 26 S. Ct. 427, 50 L. Ed. 801, 832; *Atz* v. *City of Indianapolis* (1927), 87 Ind. App. 580, 158 N. E. 523; *Quality Clothes Shop* v. *Kenney* (1914), 57 Ind. App. 500, 106 N. E. 541; *State, ex rel.* v. *Adams Express Co.* (1908), 171 Ind. 138, 85 N. E. 337, 966, 19 L. R. A. (N. S.) 93.

If the rule announced in these cases is correct, and we think it is, it follows that it was the intention of the legislature that sections 1 and 2 as amended in 1925, must be construed so as not to conflict with any other law for the protection of labor, subcontractors or materialmen, but as supplemental thereto as declared in section 3. This can be done only by following the holding of this court in *Illinois Surety Co.* v. *Lynch, supra.*

As heretofore indicated, the city, prior to the enactment of the Acts of 1911 and 1925, had the authority to require the contractor to give the bond which is the basis of this action. Indeed, the city, in the absence of any statute, had that power. The authority given the city to cause the streets to be improved carried with it the incidental power to do all proper acts reasonably necessary to that end. As was said by this court in *Title Guaranty, etc., Co.* v. *State, ex rel.* (1915), 61 Ind. App. 268, 283, 109 N. E. 237, 242, 111 N. E. 19: "The right to exercise such incidental power in cases where the public body is authorized to contract for improvements is sustained on the theory that thereby skilled labor and good materials may be more easily procured, and as tending to promote justice and equity among all persons contributing to the performance of the work."

Appellant, in the absence of the Acts of 1911 and

1925, had a right to prosecute an action on the bond, and had the absolute right to prosecute such action without filing any claim with the city or any officer thereof. · It is clear that the legislature did not intend to deprive a material man or laborer of any legal right they theretofore had. The right theretofore given to prosecute an action on the bond was neither curtailed nor ·destroyed. The right given by the Acts of 1911 and 1925, in the words of the legislature, "shall not be construed as conflicting with any other laws for the protection of labor, subcontractors or materialmen, but is supplemental thereto."

There can be no doubt but that in the absence of any statute giving appellant a right of action on the bond in controversy it would have had the right to prosecute the common law action of debt thereon. It is well settled that a statute in derogation of the common law, or which affects a common-law right, will be strictly construed, and will not change the common law, or common-law rights, unless an intention to effect such change plainly appears from the express words of the statute or by necessary implication. *Trustees, etc., v. New Albany Water Works* (1923), 193 Ind. 368, 140 N. E. 540, 27 A. L. R. 1274; *Springfield, etc., Ins. Co.* v. *Fields* (1916), 185 Ind. 230, 113 N. E. 756.

The Acts of 1911 and 1925 supplemented prior laws by creating a new right, a right to impound the funds, if desired by filing the claim as provided by the Act of 1911, and by filing the duplicate statements as provided in the Act of 1925. Instead of construing the statute to mean that a laborer or materialman must file duplicate statements of his account as contended by appellee, we hold that such party may, if he desires, file such statements and thus impound the money due the contractor. And if he exercises the right given him by filing the statements and thus impounds

the money due the contractor, he takes such right subject to the provisions of the statute limiting and fixing the time within which an action can be prosecuted against the surety on the bond. The right to impound the funds being optional, appellant was not deprived of its right to maintain an action at law for a breach of the condition of the bond by reason of its failure to file the statements as provided in the Act of 1925.

In considering the action of the court in sustaining the demurrer to the complaint, we have assumed that the improvement in question was constructed *at the expense of the city,* so that appellant could have impounded the money due the contractor by filing the duplicate statements as provided by the Acts of 1925. We call attention, however, to the fact that the complaint contains no allegation as to whether the improvement is to be paid for out of assessments on the lands affected thereby or by the city. As heretofore noted the bond in question designated the city as the obligee. It was given pursuant to §§10284 and 10342, *supra,* and expressly provides that any one who furnished material to the contractors for use in the improvement might recover for the same in an action on the bond.

Our attention has been called to *Zeidler Concrete Pipe Co.* v. *Ryan* (1927), 205 Iowa 37, 215 N. W. 801. The statute there involved provides as a condition precedent to the validity of contracts for public improvements when the contract price is in excess of $1,000, that the contractor shall give a bond signed by a *surety company* containing certain provisions for the protection of the owner and laborers and materialmen, in addition to the provisions theretofore required to be inserted in such bonds; that no action shall be commenced on such bond after six months of the completion of the work; that a verified itemized claim should be filed within four months. Section 4 of the act declared that it should be

construed as affording additional security to such claimants, and section 5 repealed all conflicting laws. The statute made no proviison for impounding the funds. . The bond, by the express words of the statute, had to be signed by a surety company instead of by individuals. The statute authorizing the bond limited the time when and fixed a condition upon which actions could be commenced on such bond, and all other laws in conflict therewith were repealed. The bond was given pursuant to that statute, and the limitation as to time and the condition precedent to a right of action became a part of the bond. The statute required a particular kind of surety, and the contract, by the express language of the statute, had no validity unless a bond with such surety was given. *Queal Lumber Co.* v. *Anderson* (1930), 229 N. W. (Iowa) 707, is based on the same statute and is not applicable to the instant case.

*Republic Iron & Steel Co.* v. *Patillo* (1926), 19 Cal. App. 316, 125 Pac. 923, was an action upon a bond given in accordance with a general statute providing for work upon streets, etc. The original act, Statutes 1885, p. 147, covered the entire subject matter, and contained thirty seven sections. It was amended in 1899, Statutes 1899, p. 23, by adding a new section numbered 6½ which required every contractor, including contracting owners, to give a bond with sureties for the protection of laborers and materialmen, and which provided that any laborer or materialman whose claim had not been paid, might, within thirty days from the time the work was completed, file a verified statement of his claim, and within ninety days after filing such claim commence an action on the bond. No provision was made in the original act limiting the time when an action could be commenced on the bond or requiring the filing of the claim. The amendment of 1899, however, became a part of the original act, and as to all things thereafter oc-

curring were as much a part of such act, as if said section 6½ had been in the act when passed in 1885. The only remedy a laborer or materialman had was an action at law on the bond. The statute requiring the bond fixed the time within which and the conditions upon which an action thereon could be maintained. As was held in *Miles* v. *Baley* (1915), 170 Cal. 151, 149 Pac. 45, a recovery could not be had on such a bond without alleging a compliance with the conditions imposed by the statute. The claimant was not given an additional right to impound the funds due the contractor. Indeed, the claimant was, by that section given no right. The right theretofore given him was limited by the amendment. It was not supplemental to other laws.

The statutes of Iowa and California are not to be compared with the statutes of this state. The statute, §§10282 and 10342, *supra,* authorizing the execution of the bond sued on in the instant case, does not require the filing of any claim, as is necessary when an attempt is made to impound the funds under section 6122, *supra.*

In harmony with the holding of this court in *Illinois Surety Co.* v. *State, ex rel., supra;* and *Equitable Surety Co.* v. *Indiana Fuel, etc., Co., supra,* we hold that appellants not having exercised their right to impound the funds, were not required to file the itemized claims as provided in §6122, *supra,* and that the demurrer to each of the several complaints should have been overruled.

Judgment reversed.

Nichols, J., dissents and reserves right to file dissenting opinion.

## DISSENTING OPINION.

NICHOLS, J.—Dissents. I cannot concur in the above, and respectively dissent for reasons stated in my dissenting opinion in the case of *Million* v. *Metropolitan Casualty Ins. Co., ante* 628, 172 N. E. 569.