Fred Hanek, Appellant *v.* The Cities of Clairton et al., Appellees. Benjamin Lustman, Individually and as representative of Members of a Class and City of Pittsburgh *v.* West Mifflin Borough, a Municipal Corporation, and Joseph W. Schiek, Tax Collector of West Mifflin Borough, Appellants.

Argued October 28, 1975, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

*Franklyn E. Conflenti,* with him *David R. Cashman,* and *Cauley, Birsic & Conflenti,* for appellant, Hanek.

*Lee A. Donaldson, Jr.,* with him *James M. McElfish, Richard G. Zeleznik* and *Bresci R. P. Leonard,* for appellants-appellees, West Mifflin Borough, et al.

*Grace S. Harris,* Assistant City Solicitor, with her *Mead J. Mulvihill, Jr.,* City Solicitor, for appellee, City of Pittsburgh.

*Willard R. Crout,* for appellees, Lustman, et al.

OPINION BY PRESIDENT JUDGE BOWMAN, March 16, 1976:

Immediately prior to January 1, 1973, Fred Hanek (Hanek) and Benjamin Lustman (Lustman), residents of Pittsburgh employed within the neighboring municipalities of Neville Township (Township) and West Mifflin Borough (Borough), respectively, were within the classes of taxpayers subject to the following taxes on wages:

(1) the 1% Pittsburgh City wage tax, imposed pursuant to the authority contained within The Local Tax Enabling Act (Enabling Act) ;[1]

(2) the 1% Township wage tax (Hanek) and the 1% Borough wage tax (Lustman), both imposed pursuant to the Enabling Act; and

(3) the 1% Pittsburgh School District wage tax, imposed pursuant to the Act of August 24, 1961, P.L. 1135, *as amended,* 24 P.S. §588.1 et seq. (Act No. 1135). The cumulative financial impact on the wages of each taxpayer was 2%, not 3%, because the Enabling Act required the Township and Borough to credit Hanek's and Lustman's payments of the Pittsburgh City tax against the taxpayers' liabilities for the Township and Borough taxes.[2]

When the City of Pittsburgh elected to discontinue the imposition and collection of its own wage tax as of December 31, 1972, Hanek and Lustman assumed that this apparent reduction in their tax liabilities would be favorably reflected on the "bottom lines" of their pay-

---

1. Act of December 31, 1965, P.L. 1257, *as amended,* 53 P.S. §6901 et seq.

2. Section 14, 53 P.S. §6914.

checks. From the perspectives of the Township and Borough, however, the elimination of the Pittsburgh City tax also removed the raison d'etre for allowing taxpayers a credit against their Township and Borough tax liabilities. Thus, concurrently with the vacation of the Pittsburgh City tax, the Township and Borough notified all persons employed within their respective bounds, including Pittsburgh residents, that, as of January 1, 1973, the Township and Borough taxes were to be withheld from their paychecks.

These governmental actions were independently challenged by Hanek and Lustman, each of whom initiated an equity action in the Allegheny County Court of Common Pleas on his own behalf and as a member of a class, seeking both an injunction against any further withholding of Township and Borough wage taxes and the refund of all moneys "improperly" withheld since January 1, 1973. While Lustman's complaint identified the Borough as the sole municipal defendant,[3] Hanek elected a far more ambitious course. His complaint named 128 local taxing authorities as defendants.[4]

Eighty of Hanek's defendants responded either with answers or with preliminary objections. In a decree nisi, entered July 2, 1974, the chancellor sustained defendants' preliminary objections in the nature of demurrers and dismissed Hanek's complaint as to all defendants. Hanek's subsequent exceptions were overruled and the decree was made absolute on July 24, 1974. Hanek's appeal to this Court has ensued therefrom.

---

3. The Borough's wage tax collector was also named.

4. We have serious doubts as to the propriety of his "inverse" class action. Further, the record reflects a total paucity of evidence on the composition of the individual tax schemes within each of the defendant municipalities. For these reasons, we will continue to treat the Township as the sole defendant, while assuming, of course, that other municipalities having like tax schemes will adapt them, where necessary, in accordance with the results of this case.

Unlike Hanek, Lustman achieved partial success at the common pleas level. His success was a direct result of the coterminous, multiple taxation of Borough residents. That is, both the Borough itself and the West Mifflin School District have imposed 1% wage taxes pursuant to the Enabling Act.[5] This, said the lower court, distinguished Lustman's situation from Hanek's and, under the automatic halving provision of Section 8 of the Enabling Act,[6] necessitated a reduction in the effective rate of the Borough tax to ½% as applied to Lustman. Lustman was awarded an injunction against future withholdings in excess of ½% of his wages and a refund of all moneys withheld since January 1, 1973, in excess of that rate. The Borough has appealed to this Court. Lustman has lodged no cross appeal.

Primarily because of the antithetical postures of the appellants herein (Hanek and the Borough), the two appeals present no common questions of law in the strict procedural sense. However, it is fundamentally clear that, excepting the application of the automatic halving provision of Section 8 of the Enabling Act, the questions raised and our responses thereto will produce a common result because of the community of interest between Hanek and Lustman on the one side and between the Township and Borough on the other.

Section 14 of the Enabling Act, 53 P. S. §6914, provides a number of alternative reliefs, in the form of tax credits, to certain taxpayers who are subject to more than one of a similar genre of state or local tax. As previously mentioned, one of the provisions of Section 14 had allowed Hanek and Lustman to credit their payments of the now extinct Pittsburgh City wage tax against

---

5. The West Mifflin School District wage tax is limited to the wages of *residents* only.

6. 53 P.S. §6908.

their liabilities for the Township and Borough wage taxes. That provision having lost its relevancy, only the first paragraph of Section 14 has arguable application to Hanek's and Lustman's tax status since January 1, 1973.

> "Payment of any tax to any political subdivision pursuant to an ordinance or resolution passed or adopted prior to the effective date of this act shall be credited to and allowed as a deduction from the liability of taxpayers for any like tax respectively on salaries, wages, commissions, other compensation or on net profits of businesses, professions or other activities and for any income tax imposed by any other political subdivision of this Commonwealth under the authority of this act." 53 P. S. §6914.

Hanek argues that the Pittsburgh School District wage tax, imposed pursuant to Act No. 1135, is a tax paid to a political subdivision "pursuant to an ordinance or resolution passed or adopted prior to the effective date" of the Enabling Act and thus offers an alternative basis for credit against Hanek's liability under the Township tax.

The application of the quoted credit depends upon the satisfaction of two conditions precedent: (1) the credit-engendering tax must be paid "pursuant to an ordinance or resolution"; and (2) the ordinance or resolution imposing the tax during the period for which credit is sought must have been "passed or adopted prior to the effective date" of the Enabling Act, or January 1, 1966. Although seemingly a question of semantics, the satisfaction of the first condition precedent rests upon whether Act No. 1135, of itself, levies the Pittsburgh School District wage tax or whether that Act merely authorizes that school district to levy the tax. Only in the latter event would the Pittsburgh School District

wage tax be paid "pursuant to an ordinance or resolution."[7]

Section 2 of Act No. 1135, 24 P. S. §588.2, reads, in pertinent part, as follows:

"The Board of Public Education of school districts of the first class A[8] *shall levy*, annually, a tax of not more than one percentum. . . ." (Emphasis added.) (Footnote added.)

A "tax levy" has been defined as " 'the formal and official action of a legislative body determining and *declaring that a tax* of a certain amount, or of a certain percentage on value, *shall be imposed* on persons and property subject thereto.' " *Prichard v. Willistown Township School District*, 394 Pa. 489, 500, 147 A.2d 380, 387 (1959). (Emphasis added.) Combining the statutory language with the Supreme Court's definition of "tax levy," we find a legislative direction that the *Board* "shall enact legislation declaring that a tax shall be imposed." Thus, Act No. 1135 anticipates local *implementation*, not *supplementation*, of the authorized tax scheme, such implementation to occur through the traditional local legislative enactments of ordinance or resolution. Therefore, the Pittsburgh School District wage tax must be perceived as being imposed *and paid* "pursuant to ordinance and resolution," thereby satisfying the first condition precedent to entitlement to the aforementioned credit.

---

7. In the situation where a statute actually levies a local tax, ordinances or resolutions would likely be needed to clarify and particularize the legislative mandate. However, such a local tax would be considered as having been paid "pursuant to statute" despite any local supplementation of the legislative scheme.

8. The Pittsburgh School District has been and continues to be the only "first class A" school district in the state. *See* Section 202 of the Public School Code of 1949, Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. §2-202.

The time period (which must include more than one *tax* period), for which Hanek claims entitlement to said credit, began on January 1, 1973, and continues through the present. To satisfy the second condition precedent, the ordinance(s) or resolution(s) levying the tax for said period had to have been adopted *prior to* January 1, 1966, the effective date of the Enabling Act. Referring, once more, to Section 2 of Act No. 1135, but enlarging our point of focus, it is provided that "[t]he Board . . . *shall levy, annually, a tax.*" 24 P. S. §588.2. (Emphasis added.) Where the legislature delegates the right to tax to a political subdivision, " ' "the grant of such right is to be strictly construed, and not extended by implication." ' "[9] Act No. 1135 empowers the Board to levy, *annually*, a tax. Since a "levy" is a "formal and official action of a legislative body," *Prichard, supra,* a strict construction of Section 2 demands annual legislative action, *i.e.,* an annual ordinance or resolution, by the Board. In no conceivable way could an ordinance or resolution levying a tax for any annual period after January 1, 1973 have been passed or adopted prior to January 1, 1966. Thus, the second condition precedent must fail, and, so with it, Hanek's attempt to claim entitlement to a credit under Section 14 of the Enabling Act.

Hanek next argues that Act No. 1135 represents antecedent state preemption of the Township's authority under the Enabling Act to impose a tax on the wages of Pittsburgh residents. In addition to its delegation of certain taxing powers to the authorities of certain political subdivisions, Section 2 of the Enabling Act expressly denies certain powers to these same authorities, one of which appears as follows:

"Such local authorities shall not have authority by virtue of this act:

---

9. *Murray v. Philadelphia,* 364 Pa. 157, 163, 71 A.2d 280, 283 (1950). (Citations omitted.)

"(1) To levy, assess and collect or provide for the levying, assessment and collection of any tax . . . on a . . . subject . . . which is now or does hereafter become[s] subject to a *state tax* . . . ." 53 P. S. §6902 (Emphasis added.)

Hanek contends that the Pittsburgh School District wage tax is a "state tax" imposed on the same subject as the Township tax, at least insofar as the latter has been applied to the wages of Pittsburgh residents. We disagree. While the subjects of the two taxes are in part identical,[10] Act No. 1135, which authorizes the levy of the Pittsburgh School District wage tax, is not a "state tax" in light of the definition accorded that phrase in *McClelland v. Pittsburgh*, 358 Pa. 448, 453, 57 A.2d 846, 848 (1948):

"' "State taxes . . . are essential to the very 'preservation' of the State itself . . . while . . . [local taxes] . . . are authorized or permitted by the State, not for its actual preservation, but merely to maintain the machinery of local government. . . ."'" (Citation omitted.)

Act No. 1135, in addition to contemplating local implementation of its proposed tax scheme, expressly limits the use of any revenues obtained through its imposition to a purely local context.

"The taxes, interest and penalties collected under the provisions of this act shall be used for general public school purposes." Section 2 of Act No. 1135, 24 P. S. §588.2.

Such a directive belies any attempt to correlate the enactment of Act No. 1135 with a motivation of "state preservation," and forecloses the state preemption argument offered by Hanek.

Returning our attention to Lustman and West Mifflin Borough, we reiterate that Lustman's success at the

---

10. They are identical only insofar as they both include the wages of Pittsburgh residents employed within the Township.

common pleas level was reposed in the lower court's interpretation of Section 8 of the Enabling Act, 53 P. S. §6908. Section 8 initially limits the maximum rate of any wage tax imposed under the Enabling Act to 1%. It then provides:

> "Except as otherwise provided in this act, at any time two political subdivisions shall impose any one of the above taxes on the same person, subject, business, transaction or privilege, located within both such political subdivisions, during the same year or part of the same year, under the authority of this act then the tax levied by a political subdivision under the authority of this act shall, during the time such duplication of the tax exists, except as hereinafter otherwise provided, be one-half of the rate, as above limited, and such one-half rate shall become effective by virtue of the requirements of this act from the day such duplication becomes effective without any action on the part of the political subdivision imposing the tax under the authority of this act."

The lower court's interpretation of the quoted portion and its application to Lustman's situation essentially proceeded as follows: (1) there are two coterminous political subdivisions, the Borough and the West Mifflin School District, each imposing a 1% wage tax under the authority of the Enabling Act; (2) therefore, during the period of duplication of these taxes, their 1% rates are automatically halved and shall be considered as ½% rates unless and until such duplication of taxes is terminated; (3) finally, since the West Mifflin School District is expressly prohibited from taxing nonresidents,[11] Lustman need only pay the Borough wage tax, and at its automatically reduced rate of ½%.

Stated more succinctly, the lower court held that the automatic reduction of the tax rates, designed to lessen

---

11. *See* Section 2(5) of the Enabling Act, 53 P.S. §6902(5).

the tax burden on *residents* of the Borough and School District, also inures to the benefit of *nonresidents* even though no duplication of taxes exists as to them. Such reasoning completely ignores both the language and the spirit of Section 8. The condition precedent to the automatic halving provided by Section 8 is the duplication of taxes upon the *same subject*. The "subject" here is the wages of a Pittsburgh resident employed within the Borough and its coterminous School District. That subject, as the lower court found, is within the tax base of the Borough tax but not within that of the School District tax. Thus, no duplication of local taxes exists as to the wages of a Pittsburgh resident, and the automatic halving provision of Section 8 is not actuated in his or her behalf.

The lower court might agree with our analysis. The point of difference lies in its refusal to recognize and enforce the distinction between a universal application of the automatic halving provision (to residents and nonresidents alike) and a limited application of the same (to residents only), consistent with the intent of the legislature.

> "It is the intent and purpose of this provision to limit rates of taxpayers referred to in this section so that the entire burden of one tax on a . . . subject . . . shall not exceed the limitations prescribed in this section. . . ." 53 P. S. §6908.

Paraphrased, this expression of intent mandates that the cumulative effect of wage taxes imposed pursuant to the Enabling Act may not exceed a rate of 1% as applied to any single taxpayer. In the situation at hand, only those persons who are *residents* of the Borough and its coterminous School District suffer the potential for such excessive tax liability. They are the "targets" of Section 8 relief. To extend the "line of fire" beyond them is warranted neither by the language nor the logic of the legislative declaration.

Hanek and Lustman have presented a series of constitutional objections which, in view of our resolutions of the previous issues considered, must now be confronted. Although raised in terms of federal due process and equal protection, as well as state uniformity, we may limit our analysis to the latter without doing injustice to the taxpayers' presentation.[12]

The uniformity clause of the Pennsylvania Constitution[13] reads as follows:

> "All taxes shall be uniform, upon the same class of subjects, within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws."

In its most fundamental application, this constitutional expression protects taxpayers within a particular tax scheme from the establishment of unreasonable bases of classification between and among them. Within the Township's and Borough's implementations of the Enabling Act, Hanek and Lustman have identified two areas of allegedly unreasonable classification: (1) the Township tax scheme creates an unreasonable distinction between nonresident workers residing in municipalities which impose like wage taxes under the Enabling Act and nonresident workers residing in Pittsburgh, in that the former are allowed credit for payment of taxes to their municipalities of residence, while Pittsburgh residents receive no credit for payments of the Pittsburgh School District wage tax; and (2) the Borough tax scheme creates an unreasonable classification between residents and nonresidents of the Borough, in that the former, because of the automatic halving provision of Section 8 of the Enabling Act, pay only $\frac{1}{2}\%$ wage tax to the Borough itself (the other $\frac{1}{2}\%$ going to the West

---

12. *Pennsylvania Company Trustee Case*, 345 Pa. 130, 27 A.2d 57 (1942).

13. Pa. Const. art. VIII, §1.

Mifflin School District), whereas nonresidents are liable for a full 1% *Borough* wage tax.

We must immediately emphasize that even though the constitutional assaults have been directed against the Township's and Borough's implementations of the Enabling Act, it is the Act itself which must be scrutinized, since these local implementations have been pursued in complete conformity with the statutory authority. The Enabling Act allows certain political subdivisions the opportunity to enact certain kinds of taxes, among which are wage taxes. Recognizing the potential for the excessive taxation of certain taxpayers through local implementations of the Act, the legislature created an integrated and coordinated statewide tax program by providing certain credit reliefs and the automatic halving provisions of Section 8. Thus, in prescribing a maximum tax rate of 1% on wages, 53 P. S. §6908, the legislature was limiting not only the rate within a single political subdivision, but also the cumulative impact of all wage taxes enacted pursuant to the Act, where a taxpayer might be subject to more than one.

In determining the uniformity of the Enabling Act, we must perceive it as an integrated tax scheme which authorizes a maximum wage tax of 1% within a particular political subdivision. The rate within a political subdivision is the same for all persons subject to the tax. By coordinating the various political subdivision tax schemes, through credits and automatic halving, the Act insures that the burden of tax under the Act will be the same for all taxpayers within a particular tax scheme. The burden of tax under the Act remains equal within a particular tax scheme regardless of whether the payment of tax is made to that particular political subdivision or, because of credits or automatic halving, to another political subdivision, or to both.

When Hanek questions the reasonableness of his having to pay taxes on 2% of his wages while persons not

residing in Pittsburgh pay taxes on only 1% of their wages, he is not questioning the uniformity of the Enabling Act, but rather the sense of fairness within the legislature, which, through Act No. 1135, has imposed an additional, but totally distinct, 1% tax on the wages of Pittsburgh residents. So also, when Lustman questions the reasonableness of his having to pay the Borough a 1% tax on his wages, while Borough residents pay a ½% tax, he is not questioning the uniformity of the Enabling Act, but rather the distribution of revenues obtained through proper implementation of the Act's authority. Neither question raises a specter of unreasonableness of classification within a proper implementation of The Local Tax Enabling Act, and neither question affords its poser a response of unconstitutionality.

In conclusion, Hanek and Lustman and all those similarly situated remain subject to the taxes imposed by the Township and Borough, respectively, pursuant to The Local Tax Enabling Act on 1% of their wages. The final order of the Allegheny County Court of Common Pleas at No. 2503 January Term, 1974 is hereby affirmed. The final order of the same court at No. 1239 October Term, 1973 is hereby reversed.