STATE OF INDIANA; INDIANA STATE DEPARTMENT OF REVENUE AND INDIANA STATE BOARD OF TAX COMMISSIONERS *v.*
CARRIE K. DAVIES AND JOSEPH N. THOMAS, CO-EXECUTORS OF THE ESTATE OF
HARRY S. DAVIES, DECEASED

[No. 2-377A79. Filed August 21, 1978. Rehearing denied January 24, 1979. Transfer denied July 27, 1979.]

*Theodore L. Sendak*, Attorney General, of Indiana, *Daniel Lee Pflum*, Deputy Attorney General, for appellants.

*Fred M. Cuppy, Gerald K. Hrebec, J. Philip Klingeberger*, of Gary, for appellees.

## CASE SUMMARY

BUCHANAN, C.J. — Defendants-appellants, State of Indiana, Indiana State Department of Revenue, and Indiana State Board of Tax Commissioners (the State), appeal from a judgment reversing a denial by the Indiana Department of Revenue of a request for an estate tax refund, claiming lack of jurisdiction and trial court error in exempting from Indiana estate tax the intangible personal property of a non-resident decedent because of reciprocity.

We affirm.

## FACTS

The undisputed facts are:

Harry S. Davies died a resident of the State of Florida with a gross estate for federal tax purposes of Two Million, Nine Hundred Five Thousand, Three Hundred Twenty-four and 64/100 ($2,905,324.64) Dollars. The portion of the gross estate located in the State of Indiana totaled One Million, Seven Hundred Forty-one Thousand, One Hundred Thirty-seven and 14/100 ($1,741,137.14) Dollars.

On August 20, 1973, the State (Indiana) assessed and certified to Carrie K. Davies and Joseph N. Thomas (Davies and Thomas), co-executors of the estate, the inheritance and estate tax payable to the State of In-

diana in the amount of Thirty-six Thousand, Four Hundred Forty-four and 55/100 ($36,444.55) Dollars. Davies and Thomas paid the assessed tax on August 23, 1973, and on October 15, 1974, requested a refund of Thirty-four Thousand Five Hundred Eighty-eight and 19/100 ($34,588.19) Dollars, which was denied by the State on November 18, 1974.

On February 13, 1975, Davies and Thomas filed suit in the Marion Probate Court appealing the denial of their request for an estate tax refund. The trial court judge reversed the denial and ordered the State to refund Thirty-four Thousand, Five Hundred Eighty-eight and 19/100 ($34,588.19) Dollars.

## ISSUES

The errors raised by the State may be resolved as two issues:

1. Did the Marion Probate Court have jurisdiction under the prevailing statutes to allow a refund of Indiana Estate Tax paid by the estate of a non-resident decedent?

2. Does IND. CODE 6-4-1-26, the Indiana Reciprocal Exemption Statute, apply to Indiana estate tax?

PARTIES' CONTENTIONS—Initially, the State contends that IND. CODE 6-4-1-21, appeal from appraisal and determination of tax, (hereinafter the Rehearing Statute) provides the sole method of appealing the denial of a refund request and because Davies and Thomas failed to comply with the time requirements of that statute, the trial court lacked subject matter jurisdiction. Davies and Thomas respond that the Rehearing Statute is not exclusive, and provides a statutory remedy which is merely an alternative to IND. CODE 6-4-1-17 (hereinafter the Refund Statute).

As to the second issue, the State alleges that IND. CODE 6-4-1-26, the Indiana Reciprocal Exemption Statute (hereinafter Exemption Statute) applies only to the inheritance taxes. Davies and Thomas counter that the Exemption Statute applies to inheritance taxes *and* estate tax and, alternatively, that the amount of estate tax paid to the State of Florida should serve as a credit in the computation of Indiana estate tax.

*ISSUE ONE—JURISDICTION*

*CONCLUSION*—The Marion County Probate Court was vested with

jurisdiction to order a refund of estate tax[1] when Davies and Thomas complied with the statutory requirements of the Refund Statute.[2]

Our first task is to compare the Rehearing Statute (IND. CODE 6-4-1-21)[3] with the Refund Statute (IND. CODE 6-4-1-21)[3] with the Refund Statute (IND. CODE 6-4-1-17)[4] to determine if the trial court acquired jurisdiction of the refund action under the Refund Statute. Or, differently stated, did the refund action fail because it was not brought under the Rehearing Statute as the exclusive remedy?

The Rehearing Statute in pertinent part provided:

Any person not satisfied with such appraisement and determination of the tax, as made by the state board of tax commissioners [department of state revenue], may appeal within ninety [90] days, from date of the certification of such board [department], to the probate court of Marion County, on paying or giving security to pay all costs, together with whatever tax shall be fixed by the court. . . .

The apparent thrust of this statute is to afford the taxpayer a method of contesting the tax determination at the appraisal and assessment stage. Its unambiguous language gives no hint that it is to be the taxpayer's exclusive remedy, nor does the State cite any authority for such a conclusion . . . and we find none! The

---

1.   The federal government imposes an "estate" tax on transfers through death of real, personal, and intangible property. Against this tax it allows a credit, based solely on the size of the estate, for state death taxes. *See* 26 U.S.C. § 2011. The transfer tax imposed by most states is less than the federal credit, therefore, many states have enacted laws imposing an additional "pick-up" tax or "state estate" tax equal to the amount by which the federal credit exceeds the state transfer tax, thus permitting the states to collect a greater percentage of the total tax paid.

2.   IND. CODE 6-4-1-24, which governed refunds to non-residents' estates, provided:

The refunding of any tax erroneously paid in any nonresident decedent's estate shall be made in accordance with section 17 [6-4-1-17] as amended, which said section shall govern refunds both as to resident decedent's as well as nonresident decedent's estates.

(repealed by 1976 Ind. Acts, P.L. 18, § 2).

(current version IND. CODE 6-4.1-10-1 — 6).

3.   IND. CODE 6-4-1-21 was repealed by 1976 Ind. Acts, P.L. 18, § 2 (current version at IND. CODE 6-4.1-7-5).

4.   IND. CODE 6-4-1-17 was repealed by 1976 Ind. Acts, P.L. 18, § 2 (current version at IND. CODE 6-4.1-10-1 — 3).

explicit language is to afford a method by which the taxpayer may proceed to contest the tax, which does not appear to conflict with the Refund Statute (IND. CODE 6-4-1-17), which in pertinent part provided:

> The state board of tax commissioners [department of state revenue] is authorized and empowered *to order the refund* and repayment, without interest, *of all taxes heretofore or hereafter erroneously wrongfully or illegally imposed on estates,* . . . and of all such taxes that are excessive in amount or in any manner wrongfully collected by the state of Indiana, whether such taxes were imposed through mistake of fact or mistake of law and whether or not such taxes were paid voluntarily and without protest, and notwithstanding any claim heretofore filed for such refund. From any order of the state board of tax commissioners [department of state revenue] with reference to any such refund or repayment, *the claimant shall have a right to appeal by filing an original action* against such board [department]; such action, . . . *in the case of a nonresident decedent, to be filed in the probate court of Marion County, Indiana.* . . . Provided, however, That an application for the refunding of such tax shall have been made to said state board of tax commissioners [department of state revenue] by or on behalf of the person entitled thereto within three [3] years after the payment. . . .

Given its plain and ordinary meaning, IND. CODE 1-1-4-1; *Bowen v. Review Board* (1977), 173 Ind.App. 166, 362 N.E.2d 1178, the Refund Statute enables the taxpayer to pay the tax as assessed and subsequently request a refund if the tax was "erroneously, wrongfully or illegally imposed . . . or in any manner wrongfully collected" whether by mistake of fact or mistake of law, provided the application for refund is made within three years after payment. This broad, sweeping language effectively eliminates any possibility that the Rehearing Statute constitutes the exclusive method for challenging a tax determination. By its very terms, the Refund Statute encourages the taxpayer (including a nonresident) to pay the assessment and subsequently request a refund.

Applying the rule that statutes relating to the same subject matter are to be construed in pari materia, *Indiana Alcoholic Beverage Commission v. Baker* (1972), 153 Ind.App. 118, 286 N.E.2d 174, we conclude these two statutes provide alternative methods by which the taxpayer may obtain relief. That is, the taxpayer

may withhold payment of the tax and challenge the tax assessment or pay the tax and subsequently request a refund.

While these statutes have not been construed by Indiana courts, our conclusion is reinforced by decisions from other jurisdictions.[5]

In *Boe v. Steele Co.* (1945), 74 N.D. 58, 19 N.W.2d 921, an executor paid the estate tax assessment without protest, however, upon learning of a subsequent judicial decision altering the amount of estate tax legally due, the executor filed an application for refund.[6]

In granting the refund, the Supreme Court of North Dakota construed the rehearing and refund statutes with the following language:

> The provisions for refundment of overpayment of taxes are inserted in statutes not only as a matter of fairness and justice, but as an inducement to the taxpayer to pay the tax promptly. The provision for refundment . . . is inconsistent with any legislative intention that the order making the assessment should become final and conclusive upon the amount of the tax actually and legally due so as to bar the right of a party to refundment unless the order for assessment is attacked by, and reversed or modified on, appeal. The provision attaches no condition to the right to a refund except alone the fact that an overpayment has been made.

*Id.* at 66, 19 N.W.2d at 925.

Likewise in *Rogers v. Oklahoma Tax Commission* (1952), 263 P.2d 409, the tax commissioner incorrectly included two insurance policies in the value of the gross estate for estate tax purposes. The executrix made no protest to the assessment, but subsequently submitted a claim for refund[7] alleging assessment under mistake of law.

In granting the refund the court noted that failure to protest the estate tax assessment did not preclude relief under the Refund Statute, on the contrary, the Refund Statute provided a separate vehicle by which the executrix could proceed. *Eg., State v. Matthews* (1971), 29 Colo.App.

---

5. We also note that under Federal Tax Statutes, the taxpayer may proceed under an assessment appeal statute, I.R.C. § 6213 or, alternatively, under a refund statute, I.R.C. § 6511.

6. 1927 N.D. Sess. Laws Ch. 267, § 9.

7. 1943 Okla. Sess. Laws tit. 68, ch. 1, § 1.

143, 480 P.2d 593; *Beals v. State* (1909), 139 Wis. 544, 121 N.W. 347.

Thus the failure to appeal the assessment under the Rehearing Statute did not deprive the Probate Court of jurisdiction. It had jurisdiction to grant a refund under the Refund Statute.

Next we must analyze the claim advanced by Davies and Thomas to see if it fell within the scope of the Refund Statute, i.e., whether the refund was for tax "erroneously, wrongfully or illegally imposed..."

The State takes a narrow view of the Refund Statute. It directs our attention to *Kelshaw v. Superior Court of San Luis County* (1934), 137 Cal.App. 189, 30 P.2d 432, and *Kern v. New York State Tax Commission* (1956), 2 A.D.2d 281, 154 N.Y.S.2d 188, both of which held that a refund could only be obtained if the tax paid exceeded the tax assessed. We note, however, that the refund statutes of both jurisdictions[8] permit a refund only if the taxes have been "erroneously paid". It is generally accepted that "erroneous payment" refers to a payment not made in conformity with the order fixing the amount of the tax. *See* 42 AM.JUR.2d, *Inheritance, Estate, and Gift Tax*, § 408 (1969).

The Indiana refund statute in effect *prior* to 1937[9] permitted refunds only if the tax was "erroneously paid", however, the amended statute,[10] the one we are now considering, was broadened to permit refunds for:

> all taxes heretofore or hereafter erroneously wrongfully or illegally imposed on estates, . . . and of all such taxes that are excessive in amount or in any manner wrongfully collected by the state of Indiana, whether such taxes were imposed through mistake of fact or mistake of law and whether or not such taxes were paid voluntarily and without protest, . . . .

Again we look to foreign jurisdictions with similarly worded refund statutes for aid in defining the scope of the broadened statute.

In *State v. Matthews, supra,* an inheritance tax commissioner incor-

---

8. 1929 Cal. Stats. § 11, subdiv. 3, 4; N.Y. TAX LAWS (McKinney) § 249-aa.

9. 1931 Ind. Acts ch. 75, § 17.

10. 1937 Ind. Acts ch. 159, § 2.

rectly assessed an annuity as a taxable transfer. Under the prior refund statute,[11] the executor was ineligible for refund unless the tax was "erroneously paid." However, the statute was amended to provide for refunds "when any amount of inheritance has been incorrectly assessed and paid because of an error of fact or law made either by the inheritance tax commission or by the representative of the estate, . . ."[12] The court ordered a refund noting that the broader amended statute provided an additional remedy separate from the rehearing statute.

Similarly, in *Rogers v. Oklahoma Tax Commission, supra,* an executrix obtained a refund claiming incorrect assessment by the tax commissioner. The court held that the claim fell within the Oklahoma Refund Statute which provides:

> Any taxpayer who has so paid any such tax to the State of Oklahoma through error of fact or computation or mistake of law, may within one year from the date of payment thereof, file with the Oklahoma Tax Commission a verified claim for refund. . . .[13]

While it is not exactly clear on what basis the State argues the refund sought does not come within the Refund Statute, it is clear it relies on the language of a refund statute in effect prior to 1937 and cases which used the words "erroneously paid" . . . a phrase missing from the Refund Statute, which has (had) broad language allowing refunds if the tax was "erroneously, wrongfully, or illegally imposed". So the Refund Statute's language is more than broad enough to contemplate the refund action brought in this case.

*ISSUE TWO—RECIPROCITY*

*CONCLUSION—* The Exemption Statute, IND. CODE 6-4-1-26, which was in effect prior to 1976,[14] applies in this case, thus exempting Davies' Estate from payment of Indiana estate tax on intangible personal property.

---

11.    1963 COLO. SESS. LAWS § 138-3-46.

12.    COLO. REV. STAT. § 39-23-137.

13.    1943 Okla. Sess. Laws tit. 68, ch. 1, § 1.

14.    IND. CODE 6-4-1-26 was repealed by 1976 Ind. Acts, P.L. 18, § 2 (current version at IND. CODE 6-4.1-3-5).

Militating against the State's position that the Exemption Statute does not apply to Indiana estate tax is the history of state reciprocity provisions and the unequivocal terms of our Exemption Statute.

Long ago the United States Supreme Court held that there is no constitutional impediment to the imposition of multiple death taxes upon intangible personal property by the decedent's domiciliary state and other states providing benefit and protection to the property interest represented by the intangible personal property. *Greenough v. Tax Assessors* (1947), 331 U.S. 486; *State Tax Commission of Utah v. Aldrich* (1942), 316 U.S. 174; *Curry v. McCanless* (1939), 307 U.S. 357. Thus more than one state could tax intangible personal property of a decedent. The likelihood of multiple taxation was significantly reduced by the enactment of reciprocity provisions by various states . . . Indiana being one. March, *Multiple Death Taxation in the United States*, 8 U.C.L.A. L. REV. 698 (1961).

Our Exemption Statute, IND. CODE 6-4-1-26, (enacted in 1931 and repealed in 1976)[15] provided:

The tax imposed by the provisions of this act [6-4-1-1 — 6-4-1-40] in respect of personal property, except tangible personal property having an actual situs in this state, shall not be payable if the transferor at the time was a resident of a state or territory of the United States, or of any foreign country, which at said time of his death, by the laws of such state, territory or country of residence of the transferor contained a reciprocal exemption provision under which nonresidents were exempted from transfer taxes or death taxes of every character in respect of personal property, except tangible personal property having an actual situs therein: Provided, That the state, territory or country of residence of such nonresidents allowed a similar exemption to residents of the state, territory, or country of residence of such transferor. For the purpose of this section the District of Columbia and possessions of the United States shall be considered territories of the United States.

One need not strain to conclude that the legislative intent is to exempt from taxation under the Indiana Inheritance and Estate Tax

---

15. *Id.*

Act[16] the intangible personal property of a non-resident decedent if he is a resident of a jurisdiction having a reciprocal exemption statute exempting non-residents from death taxes of every character.

There is no inconsistency between the Exemption Statute and the statute imposing an estate tax on non-resident decedent estates, IND. CODE 6-4-1-37(b), (an amendment to the 1931 Tax Act), which provided:[17]

> (b)  A tax is levied against the estate of every decedent not domiciled in this state upon the transfer of the portion of the decedent's gross estate in the state of Indiana equal in amount to that proportion of the amount by which the death tax credit exceeds the amount of state death taxes, exclusive of taxes imposed by other states of the character and purpose of the tax levied by paragraph (a) of this section which the value of the portion of the decedent's gross estate in the state of Indiana bears [to] the value of decedent's entire gross estate.

The two statutes can be harmoniously construed, giving meaning and effect to each. *Economy Oil Corp. v. Indiana Department of State Revenue* (1974), 162 Ind.App. 658, 321 N.E.2d 215; *Wayne Township v. Lutheran Hospital* (1974), 160 Ind.App. 427, 312 N.E.2d 120.

In enacting the amendment to IND. CODE 6-4-1-37 in the Indiana Inheritance and Estate Tax Act it is presumed the Legislature was aware of existing statutes on the same subject. *Morgan Co. R.E.M.C. Corp. v. Indianapolis Power & Light Co.* (1973), 260 Ind. 164, 302 N.E.2d 776; *Angel v. Behnke* (1975), 166 Ind.App. 541, 337 N.E.2d 503; *Wayne Township v. Lutheran Hospital, supra.* And in construing an amendment to a statute, the entire act must be given the same construction as if the amendment had been part of the original. *Board of Commissioners of Delaware County v. Farmers State Bank of Eaton* (1937), 104 Ind.App. 692, 10 N.E.2d 769; *Concrete Steel Co. v. Metropolitan Casualty Insurance Co. of New York* (1930), 95 Ind.App. 649, 173 N.E. 651. This interpretation allows the estate tax statute to

---

16.  IND. CODE 6-4-1-1 — 40 was repealed by 1976 Ind. Acts, P.L. 18, § 2 (current version at IND. CODE 6-4.1-1-1 — 6-4.1-12-11).

17.  IND. CODE 6-4-1-37 was repealed by 1976 Ind. Acts, P.L. 18, § 2 (current version at IND. CODE 6-4.1-11-1 — 2).

operate with full force, however, the estate tax levied against non-resident decedents entitled to reciprocity is declared not payable by the operation of the Exemption Statute.

Levy is an ambiguous term with its meaning often dependent on the context in which it is used. *Hill v. Whitlock Oil Services, Inc.* (1971), 450 F.2d 170; *Alpha Beta Acme Markets, Inc. v. City of Whittier* (1968), 262 Cal.App.2d 16, 68 Cal.Rptr. 327; *Fahey v. City Council of Sunnyvale* (1962), 208 Cal.App.2d 667, 25 Cal.Rptr. 314. However, many jurisdictions have defined levy as that legislative function which determines the underlying purpose of a particular tax, fixes its rate and determines the subject of its exaction. *In re Zoller's Estate* (1961), 53 Del. 1448, 171 A.2d 375; *Hanek v. Cities of Clairton* (1976), 24 Pa.Cmwlth. 69, 354 A.2d 35; *Breckenridge v. County School Board* (1926), 146 Va. 1, 135 S.E. 693; *Carkonen v. Williams* (1969), 76 Wash.2d 617, 458 P.2d 280. Whereas the term payable may be more generally defined as "that which is to be paid, which is justly due, or legally enforcable . . . when a person is under obligation to pay. . . ." *Jamouneau v. Harner* (1954), 16 N.J. 500, 512, 109 A.2d 640, 646. *See also* BLACK'S LAW DICTIONARY (Rev. 4th ed. 1968).

Our conclusion that the plain language of the applicable sections of the Indiana Inheritance and Estate Tax Act mandates exemption of a non-resident's intangible personal property from Indiana estate tax if he is a resident of a jurisdiction having a reciprocal exemption statute is strengthened by the Legislature's repeal of the reciprocal exemption statute in 1976. It then enacted IND. CODE 6-4.1-3-5 which specifically allows an exemption only for *inheritance tax* imposed on non-resident decedents entitled to reciprocity. Thus we come within the rule of statutory construction that a change in the terms of a statute raises the presumption that the Legislature intended to change the pre-existing law. *Gingerich v. State* (1950), 228 Ind. 440, 93 N.E.2d 180; *Sekerez v. Youngstown Sheet & Tube Co.* (1975), 166 Ind.App. 563, 337 N.E.2d 521.

There is no disagreement between the parties as to the existence of a reciprocal exemption statute[18] in the State of Florida and that the dece-

---

18.   FLA. STAT. § 198.44.

dent was a citizen thereof. *See* 54 *Op. Att'y Gen.* 262 (1959). Consequently, the estate tax levied against Davies and Thomas, as co-executors, was not payable because of the specific terms of the exemption statute then in effect.

The judgment of the trial court is therefore affirmed.

Robertson, J. (by designation) concurs.

Sullivan, J. concurs in result.

NOTE—Reported at 379 N.E.2d 501.